## No. XIX.

### A. B. SHELBY v. THOMAS JOHNSON.

#### (See Note 71.)

*Appeal from arbitration of the Hon. A. Hutchinson, Judge of the Fourth Judicial District.*

HEMPHILL, CHIEF JUSTICE.—A controversy having arisen between the parties in this cause in relation to the right to hold and exercise the office of judge of the First Judicial District, they mutually, and in writing, agreed to submit their conflicting pretensions to the arbitrament and decision of the Hon. A. Hutchinson, judge of the Fourth Judicial District, subject, however, to appeal to the Supreme Court of the Republic for final adjudication.

At the trial in the court below the following facts were admitted, viz: That presently after the organization of the Republic by a joint vote of both houses of Congress, Shelby Cozine was elected judge of the First Judicial District, and was qualified as such for the term of four years, expiring in November or December, 1840. That prior to November 29, 1839, the said Cozine died; and that on that day the claimant, Shelby, was, by a joint resolution preceding and a joint vote following, of both houses of Congress, elected judge of that district to fill the unexpired term of the said Cozine; was commissioned on the same day to fill that unexpired term; that he presently afterwards was qualified and proceeded to discharge and had ever since (except as interrupted by the claim of the other claimant) discharged the duties and functions of the office; and claimed to hold and exercise the said fran-

chise for the full term of four years from and after the said 29th of November, 1839.   That in the month of January, 1841, the claimant, by a like resolution and vote of both houses of Congress, was elected to hold the same office for four years; that he was presently afterwards commissioned and qualified, and attempted to exert the functions and .duties of the said office and still claimed so to do, but had been and was still opposed by the claim of the said Shelby.   The controversy was decided at the spring term, 1841, of the District Court for Gonzales County in favor of the claim of the said Thomas Johnson, and the appellant was allowed his appeal without bond or citation.

The claimant, Shelby, having been elected and commissioned to hold his office for about one year, it is urged that as well by the conditions attached to the action of the electoral body as by his own conduct, he was precluded from holding the judicial franchise for a more extended period.

As the tenure of this office is prescribed by the Constitution, that instrument must furnish the rules by which the action, both of the appellant and of the legislative authority, must be regulated.   On its broad foundation rest alike the rights of individuals and the powers of government itself and of all its departments.   Its authority is paramount, and the acts of individuals and of the government are equally subjected to its control.   Its maxims or principles can not be violated without endangering the safety of our institutions; nor can any one of the separate bodies, in which power is deposited by this organic law, encroach on the rights, franchises or privileges of another without hazarding the existence of the distinctive features and most valued characteristics of our republican form of government.   This tribunal, in its proper sphere, is vested with the extraordinary power of testing, not only the acts of individuals but of the highest authorities by this unchanging criterion; and where the default is obvious, we can make no discrimination in our judgment between the aberrations of private persons and of the most powerful branches of the government.

Let us proceed, then, to examine the action of Congress in the matter now before us, by the provisions of this fundamental rule.   In article 4, section 1, it is laid down, that "the judges of the Supreme and interior courts shall hold their office *for four years;* be eligible to re-election," etc.   This is the only reference which in express terms is made to the tenure of the judicial office, nor are there other expressions or terms used which by implication or construction can modify the plain and certain intendment of the foregoing declaration.   The text of the Constitution on this subject is so clear and perspicuous that it can not be elucidated by argument.   Would any one contend

---

v. Boulden, 18 T., 431; O'Connor v. Cook (T. C. A.), U. R. C., 1894; T. & P. Ry. Co. v. Edmisson (T. C. A.), U. R. C., 1899.  Defendant's residence at the time suit is filed, determines jurisdiction and venue.  Whiting v. Briscoe, Dal., 540; Walker v. Walker, 22 T., 331; Faires v. Young, 69 T., 482; Hopson v. Caswell, 13 T. C. A., 492, 494; Kuteman v. Page, 3 App. C., sec. 165.  Carrying on a business does not fix the owner's domicile, and where defendant

that Congress could extend the tenure of the office beyond the period of four years. And do not the terms of the above limitation of power, equally by the simplest rules of construction, prohibit its abridgment to a more limited term? The inhibition could not have been, in our opinion, more strong, if the Congress had in express terms been forbidden to appoint the judges for a less time than four years. The tenure of the office being thus precisely limited and defined by the Constitution, the legislative body, deriving its authority from the same source, could not in the appointment of incumbents attach other and variant terms and conditions by which to affect the same.

If it be within the competency of Congress to modify the terms on which the franchise should be holden, their authority can not result from any constitutional grant, but from some imaginary power of discretion; which, as it is restrained by no known limits, easily leads to the wildest excesses, and might subject the judicial department to the caprice of perhaps a reckless majority. When the exercise of power is limited only by the discretion of the incumbent, it becomes arbitrary, and the most valued rights are no longer secure. If the will of majorities be unrestricted, they could not be prevented, when maddened by passion or perhaps worse motives (and the records of history furnish many similar examples of misrule), from declaring vacancies at any time in the offices of other departments of the government, and filling them for a year, a few months, or days, with the apt instruments and supporters of usurpation and tyranny. Our safety depends upon an observance of the Constitution and a compliance with the letter and spirit of its requisitions.

Nor is any argument deducible from the fact that Judge Cozine departed this life before the expiration of four years from the date of his election. When the incumbent is removed by death, the office becomes vacant and returns to the appointing power. It can not either in reason or in the nature of things be connected with or affected by the deceased unless the creative law carries out a definite and precise period for the beginning and termination of the term of the said office, whether the same has been holden by one or more incumbents in the intervening space. There is nothing in the terms used to justify the construction that the tenure of the judicial office was such a carried-out, fixed term; or that on the death or removal of an incumbent the next appointee should occupy his place and complete the portion of time for which he could have enjoyed the office, had his death or removal not occurred.

changes his residence and continues his business suit should be brought in the county where his family resides. Tucker v. Anderson, 27 T., 276; Blucher v. Milsted, 31 T., 621; Strohl v. Pinkerton, 1 App. C., sec. 470. Where a person has resided for a considerable time in one county, it is his residence as to venue until a complete change is made by him. If he is in the act of moving from one county to another or has made the place of his residence uncertain by his acts, he may be sued in either county. Brown v. Boulden, 18 T., 431; Wilson v. Bridgeman, 24 T., 615; Tucker v. Anderson, 27 T., 276; Faires v. Young, 69 T., 482; Blum v. Younger, 2 U. C., 302. As a general rule suits in a justice court should be brought in the precinct where defendant resides, and plaintiff should show that the case is within one of the excep-

The language of the instrument forbids such a construction. It is\ equally opposed by public policy. The advantages of an independent judiciary are acknowledged and attempted to be secured by all wise communities. These, to some limited extent, are obtained by conferring the office for a period of four years. Where the appointment endures but for a year, a few months, or even days, the firmness of the judicial magistrate receives no support, under such circumstances, from the tenure of his office; but on the contrary, it tends to enfeeble the inherent independence of his character.

The declarations of the Constitution being explicit on the subject, and the same not being repugnant to any other provisions of that instrument, nor changed nor modified by any justifiable rules of implication or construction, the conclusion is inevitable that the incumbent of the office of district judge is entitled to hold and exercise the same for the full period of four years.

Nor is the argument valid that the claimant, Shelby, having accepted the office under the circumstances of his election, was bound to vacate the same at the expiration of the time pointed out in the proceedings of Congress. The length of time for which the office should be holden depended neither upon the Congress nor the claimant. It was prescribed and guaranteed by the Constitution, and was subject to no modification from the mistakes or misapprehensions of the appointing power or of the individual applicant.

When the election is finished, the will and power of the Legislature cease; the incumbent becomes a member of a co-ordinate and independent branch of the government; his office is based upon the Constitution, and is protected by all the immunities thrown around it by that instrument. The organic law furnishes the standard for the term of his office, and by that alone can it be measured or controlled.

Nor can it be urged that the appointment of the claimant having been made for a less term than four years, the election was illegal and invalid, and the appointment itself null and void. The action of Congress in this instance may be regarded in two points of view: 1. As to the manner of filling the office. This was by joint ballot of both houses of Congress, and was therefore constitutional. 2. As to the terms, on which the office should be holden. These they had no warrant to prescribe, except as authorized by the Constitution; and their action in that particular was null, void and inoperative.

The invalidity of one portion of a statute or act of Congress does not, however, destroy the whole. The illegality of the conditions affixed to

tions when he brings suit elsewhere. Phillio v. Blythe, 18 T., 124; Cowan v. Nixon, 28 T., 230. To entitle plaintiff to maintain a suit in a county or precinct other than where defendant resides, he should bring his case clearly within one of the exceptions. In such cases, it seems, the court has jurisdiction unless defendant claims his privilege. Masterson v. Ashcom, 54 T., 324; Carro v. Carro, 60 T., 395; Watson v. Baker, 67 T., 48; Lindheim v. Muschamp, 72 T., 33; Hilliard v. Wilson, 76 T., 180. Where plaintiff alleges in his petition that defendant resides in another county, he should also allege facts showing that the suit is brought in the proper county. Failure to do so may be cured

this office do not affect the act of appointment; but the same being legal, the constitutional incidents of the franchise at once arise, and the appointee was entitled to their enjoyment.

Having considered the law and facts of this controversy as submitted to us on the record, we are of opinion that the court below erred; that the claimant, Shelby, was entitled to hold his office for the full period of four years from the date of his election; and it is therefore ordered and adjudged that the judgment of the court below be reversed.

*Reversed.*

## No. XX.

### JOHN S. SYDNOR V. THOMAS J. CHAMBERS.

(See Note 72.)

*Appeal from Robertson County.*

MORRIS, JUSTICE.—John S. Sydnor appeared in person before Richard Morris, judge of the First Judicial District, and being duly sworn, made the following affidavit: "That Thomas Jefferson Chambers is justly indebted to him in the sum of $13,332.32; that said Chambers resides beyond the jurisdiction of the court, so that the ordinary process of law can not be served on him, and that an attachment is not sued out for the purpose of vexing or harassing the said Chambers, or other improper motives;" which affidavit was signed by said John S. Sydnor and subscribed by the judge, as having been sworn to before him on the 17th of July, A. D. 1842.

On the 16th of August this affidavit, with a petition and bond, were filed in the clerk's office of the county of Robertson, and on the same day the clerk issued a writ of attachment, in the usual form thereon, which writ was returned by the sheriff, "executed on certain lands of the defendant in said county."

At the term of the district court held for the county aforesaid, on the 24th of April, 1843, and on the 26th day of said month, the plaintiff's attorney moved for a judgment by default against the defendant for want of a plea. The defendant then came by counsel, and moved to quash the plaintiff's attachment, on the following grounds:

1. Because the affidavit was made before the judge of the First Judicial District, on the 17th of July, 1842.

2. The writ was issued and the bond taken before the clerk of the Third Judicial District, on the 16th of August, of the same year.

by amendment. Wilson v. Adams, 15 T., 323; Evans v. Mills, 16 T., 196. The right to be sued in the proper county is a personal privilege and may be waived either by an affirmative act or by failure to claim the privilege at the proper time or in the proper manner. Pool v. Pickett, 8 T., 122; Ryan v. Jackson, 11 T., 391; Morris v. Runnels, 12 T., 175; Gildart v. Grumbles, 22 T., 15; Hays v. Stone, 36 T., 181; Hutchins v. Chapman, 37 T., 612, 614; Beazley v. Denson, 40 T., 416; H. & T. Ry. Co. v. Oram, 49 T., 341, 344; Lewis v. Davidson, 51 T., 251; Masterson v. Ashcom, 54 T., 324; Masterson v. Cundiff, 58 T., 472; De la Vega v. League, 64 T., 205; Kendall v. Hackworth, 66 T.,

3.  That the attachment was not issued by the officer to whom the application was made.

4.  The attachment was not sued out and signed by the proper officer, nor the papers returned in the manner prescribed by law.

5.  The proceedings were irregular, illegal and informal, and there was no proper affidavit made.

6.  The writ was not signed by the judge before whom the affidavit was made, nor was any affidavit made before the officer who issued the writ and took the bond.

The motion was overruled by the judge, on the ground that the objections there taken could only be raised by plea in abatement; which opinion of the court was excepted to by defendant.  The defendant then filed a plea in abatement, setting forth that the writ of attachment, as well as the affidavit and bond, were void and ought to be quashed, for the same reasons substantially as were stated in the motion.  To this plea a demurrer was filed by the plaintiff, which demurrer was overruled by the court and the plea sustained.  Whereupon the plaintiff asked leave to amend his affidavit, which was granted by the court and accordingly done.  The defendant asked leave to plead to the merits, which was refused by the court, on the ground that the statute required that he should replevy the property before pleading, which he had failed to do; to all of which acts the defendant excepted.  A jury was then impaneled, which found a verdict for the plaintiff for the amount claimed by him, with interest by way of damages.

A writ of error was subsequently sued out to this court; and it now stands before us for a revision.

The causes assigned as error are as follows:

1.  Because there was no affidavit setting forth and averring the fact, relied on as the ground of the attachment, as existing co-ordinately with the emanation of the writ—the fact sworn to being referred to a date nearly a month previous.

2.  The affidavit does not aver that by reason of the alleged non-residence the plaintiff was in danger of losing his debt.

3.  The proceedings did not all originate before the same officer, but emanated from different officers of different judicial districts.

4.  The want of a proper affidavit could not be supplied by amendment, at the time of the trial of the cause.

5.  The proceedings of the court below ought to have been quashed upon motion, and under any aspect of the case, the judgment of the court below ought to have been to quash the attachment, whether on the motion or the plea.  And the court erred in allowing the amended affidavit to be filed.

---

499; State v. Snyder, 66 T., 687; Watson v. Baker, 67 T., 48; Russell v. T. & P. Ry. Co., 68 T., 646; Bonner v. Hearne, 75 T., 242; Foster v. G. C. & S. F. Ry. Co., 91 T., 631; Aldridge v. Webb, 92 T., 122; Swearingen v. Wilson, T. C. A., 157; Equitable Mort. Co. v. Weddington, 2 T. C. A., 373; Fairbanks v. Blum, 2 T. C. A., 479; Kemp v. Whorton Co. Bank, 4 T. C. A., 648; Marshall v. Spillane, 7 T. C. A., 532; Machine Co. v. Edwards, 9 T. C. A., 537; Meade v. Jones, 13 T. C. A., 320; H. E. & W. T. Ry. Co. v. Granberry, 16 T. C. A.,

6. The court below ought to have allowed the defendant to plead to the merits, without replevying the property.

7. The judgment of the court below was for more than the plaintiff alleged to be due, and for interest not declared for.

8. The security on the plaintiff's attachment bond was his own counsel.

9. The appropriate remedy is by motion to quash, when the proceedings are absolutely void for the want of legal requisites; and the remedy by plea in abatement is merely correlative.

We do not propose to discuss and decide all the various points which have been raised by the ingenuity of counsel in this case; but shall confine ourselves to those which are conclusive in our minds, and leave for future adjudication points which may admit of doubt but are not essential to the disposition of this cause.

Changing somewhat the order of errors as assigned by counsel, we shall first consider those grounds which are suggested as error, subsequent to the default taken by the plaintiff below, as set forth in the fifth and sixth assignments of error.

We think that there was error in the court below, in the refusal to allow the defendant to plead to the merits, after the amendment made by plaintiff to his affidavit.

The record shows that the defendant asked leave to plead to the merits after the amended affidavit was filed, which was refused by the judge, on the ground that he had not filed his replevy bond as required by the eleventh section of the statute of attachments. That section prescribes: "That any person against whose estate, an attachment has issued, etc., may at any time before final judgment entered, or a writ of inquiry executed, upon giving special bail in double the amount of the debt, replevy the estate so attached and plead to the issue, so that the plaintiff is not thereby delayed of his trial, provided that the defendant shall not be required to give special bail before he is admitted to *appear* and *plead.*"

We will premise any remarks upon this section by saying, that so far as defendants are concerned the rigor of the rules of construction usually applied to attachments does not apply. It is to the plaintiff, who seeks to take advantage of the remedy, that those rules are applicable, and not to him who is brought unwillingly within their provisions. Although this section be very awkward in its terms, still I do not see much difficulty as to its construction. We can not reasonably understand that Congress intended to deprive a debtor of the great right of defending himself in all proper methods against the claims of his creditor, especially, too, when that creditor by his own act had secured a lien on his property. If the section would lead us to infer anything as to the legis-

391; State v. Patterson, 17 T. C. A., 231; Slaughter v. Moore, 17 T. C. A., 233; Pioneer Savings & L. Co. v. Peck, 20 T. C. A., 111; Sealy v. Whitfield, 24 T. C. A., 56; Southern Rock Island Plow Co. v. Pitluk, 26 T. C. A., 327; Walker v. Stroud (T. Sup.), U. R. C., 1887; Bergstrom v. Burns (T. C. A.), U. R. C., 1893. The object of statutes fixing venue is protection and convenience of

lative will, it would be that it was their intention to secure a *right* to the defendant, and not to deprive him of one; and that is the right to replevy the property which has been seized, by giving a bond in a certain amount; for it will be noticed that in no other section of that act is this right of replevy secured to the debtor. In fact they seem anxious to prevent the possibility of misconstruction as to their meaning, for the proviso secures the right to appear and plead under all circumstances and in any instance. The creditor's rights were secured and protected by the lien on property seized by virtue of his attachment; which property must, by the law, remain in the hands of the officer until a proper bond is given by the debtor. The debtor's rights are enlarged by permitting him to replevy that property by bond in a certain amount; but surely it can not reasonably be contended that, if unable to give that bond, it was the legislative intention that his lips should be sealed, and his defense, however meritorious, unheard. Such is not the proper construction, and the court erred in so ruling.

We think that the court erred in permitting the plaintiff to amend his affidavit, after sustaining the plea in abatement filed by the defendant.

The statutory remedy by attachment being summary in its character and onerous in its effects, in other words, "in derogation of common right," has by all courts and in all times, save when greater latitude has been given by statute, been restrained by the most rigid rules of construction. In Grigg v. York this doctrine is laid down in our courts, and that it is the correct doctrine does not now admit of disputation. The right to amend the proceedings in attachments then does not exist, unless it be given in the statute of attachments, or by some other statute, in pari materia. No such right is found in the statute of attachments, passed in 1839, under which this action is brought; but it is contended that by the twentieth section of the law "establishing the jurisdiction and powers of the district courts" (volume 1, page 204), that the right is given. That law says: "That every court shall have power to permit *amendments in all proceedings whatsoever* before verdict, so as to bring the merits of the question fairly to trial."

That proceedings in attachment are in the nature of civil suits, and to be governed by the ordinary rules applicable to such suits and prescribed by Congress—unless such rules be excluded in express words, or manifestly repugnant to the nature of the attachment process—is too plain a proposition to be controverted, and has been expressly decided by our court. See Fowler v. Poor. But that, for that reason, the law

---

resident citizens and to this end they should receive a liberal construction in favor of the protection intended. Statutes enlarging area of venue are not given a retroactive effect unless plainly expressed. Finch v. Edmonson, 9 T., 504; Baines v. Jemison, 86 T., 118. Plaintiff will not be permitted to maintain an action and deprive the defendant of his privilege by bringing his suit in one form and changing it by amendment to another, nor by taking a change of venue before answer is filed. Martin v. White, 20 T., 174; Fant v. Kenedy Pasture Co., 29 T. C. A., 530. But he may set up additional causes of action by way of amendment when same does not operate as a fraud on defendant's privilege. Kendall v. Hackworth, 66 T., 499. Defendant can not be deprived of the privilege to be sued in the proper county by

of amendments prescribed for the usual civil actions in courts of justice applies to the particular class called attachments, by no means follows. The Congress, in passing laws, are presumed to intend that the usual and universal rules of construction applied by courts to laws of a similar character will be given; and unless they wish such to be the rule of construction of the courts, they will express in terms a contrary intention. The rule of construction given by courts to laws regulating ordinary civil suits is liberal and comprehensive. The rule of construction given to the extraordinary process of attachment is, on the other hand, rigid, severe and restricted. These rules are the *law* itself, and we must presume that when it is the intention of Congress to change this law as to either class of cases, they will so expressly declare in words, or by implication so direct as to admit of no doubt. Many of the general enactments might apply to each class of cases; but when the rule of construction which forms the most prominent distinction between the two is to be touched, then the *words* must be *distinct,* or the *implication* indubitable. This law of amendments was passed nearly three years prior to the statute regulating attachments, and it applies to proceedings in common civil suits. The statute of attachments is silent on the subject of any amendment to ameliorate the rigor of construction which will necessarily be given to it by the courts; and it even by intimation, in the fourth section, avoids the conclusion that the Congress willed that any law of amendment should apply. The policy of the law is against permitting amendments to affidavits for any purpose, much less where the interests of parties might lead them to perjury; and whilst courts and juries look with suspicion and distrust on the oaths of persons whose interests are involved in any instance, they turn with *holy horror* from *amended swearing.* We think, therefore, that the court erred in permitting an amended affidavit to be made. It is contended, however, here, by the appellee, that the affidavit was not defective, and that it as well as the other proceedings under it were regular and proper. The objections taken to the affidavit were that it was defective in not containing an averment, "that the plaintiff was in danger, in consequence of the alleged nonresidence of said defendant, of losing his debt;" and second, that it was defective in not being made at the same time in which, and before the same officer by whom the other proceedings were had; having been sworn to, nearly thirty days before it was filed in the clerk's office, before the judge of the first district.

A mere inspection of the third section of the statute regulating proceedings in attachment will show that the first objection taken is un-

bringing suit against another at a place which is an exception as to the latter and not as to defendant. Hilliard v. Wilson, 76 T., 180, 184; Behrens Drug Co. v. Hamilton, 92 T., 284; R. R. S. & W. Ry. Co. v. Blount, 3 T. C. A., 282; First Nat. Bank v. East, 17 T. C. A., 176; Gresham v. Welsh, 17 T. C. A., 712. Until a new county is actually organized and new officers elected, jurisdictional domicile of its inhabitants remains in parent county. O'Shea v. Twohig, 9 T., 336; Runge v. Wyatt, 25 T. Supp., 291; Lumpkin v. Muncey, 66 T., 311; Baker v. Beck, 74 T., 562; Dodson v. Bunton, 81 T., 655, 657; Ruse v. Bartlett, 1 T. C. A., 335, 339; Henson v. Sackville, 2 T. C. A., 416. Suit to contest right to county office must be brought in district court of the county in

tenable.  One of the substantive and distinct grounds for suing out an attachment is, that the party against whom it is sought "resides beyond the jurisdiction of the court, so that the ordinary process of the law can not be served upon him;" and when that is sworn to, along with the succeeding requisites, to wit, "the amount due, and the statement that the attachment is not sued out for the purpose of vexing or harassing the defendant," the affidavit is complete and proper.  On the second point, I am instructed by a majority of the court to decide, that it is a fatal defect.  The intention of the statute is that these proceedings, viz., the affidavit, the bond and the writ, shall be as nearly a simultaneous an act as possible.

Various persons are qualified under the statute to issue this writ, and each and every one has perfect and complete power over all the proceedings to the time of the delivery of the writ to the executive officer.  A judge, a justice, or a clerk can take the affidavit and bond and issue the writ, returnable as the nature of the case may require; and it is likewise the duty of the judge, or justice, to return the bond and affidavit into the proper court.  The rights of the plaintiff would not be endangered; for under no supposable case could it happen that he would be deprived of his remedy for want of an officer to whom he could make the application; whereas, the rights of the defendant would be seriously affected, if an affidavit to a fact, which may have existed at the time it was sworn to, should be held up for months, and then put into life and being after an entire change of the facts and circumstances of the case.  No final and invariable rule could be adopted by the court as to the length of time which should elapse before the presumption of indebtedness (on an affidavit taken months before) would cease to exist, or the grounds for the affidavit have passed away.  The spirit and intention of the law are against it; and the court below did not err in sustaining the plea of the defendant on that point.  We have seen, however, that there was error in permitting the plaintiff to amend his affidavit after that decision, and proceed on the merits.  The affidavit being null and void on account of its defective taking, all the proceedings thereon were void; and the judgment of the court below should have been what the judgment of this court now is, an entire dismissal of the cause.  It is therefore ordered that the judgment of the court below be annulled and reversed, and that the case be dismissed at the costs of defendant in error.

*Reversed and dismissed.*

which the election was held.  Rev. Stats., 1895, arts. 1796-1804g; Calverley v. Shank, 28 T. C. A., 473.  Suit to supply lost instrument, should be brought in county where defendant resides.  To supply lost records, in county where the instrument was recorded.  Rev. Stats., arts. 4594 and 4585; Douglas v. Baker, 79 T., 499.  Suit for specific performance should be brought in county where defendant resides, unless contract provides for performance elsewhere. Durst v. Swift, 11 T., 273; Hearst v. Kuykendall, 16 T., 327; Miller v. Thomas, 17 T., 170; Cavin v. Hill, 83 T., 73; McCampbell v. Durst, 15 T. C. A., 522, 530. Suit to compel a county surveyor to perform an official duty should be brought in the county of his residence, though others who are asserting an adverse interest are joined with him.  T. Mex. Ry. Co. v. Locke, 63 T., 627; Thomson v. Locke, 66 T., 383, 392.  Motion against a sheriff and his sureties for failure to pay over money collected on execution must· be made in the

## No. XXI.

### GARNET ET AL. v. RICHARD R. McINTYRE ET UX.

*Motions on the part of appellants and also on the part of appellees. From Fannin County.*

HEMPHILL, CHIEF JUSTICE.—The motions in this cause have been considered; and some indulgence will be extended to the appellants, in consequence of the irregularities and defects of the conveyance by mail, which would not be granted under dissimilar circumstances. We are of opinion, however, that the appellants should have exercised a greater degree of diligence in causing to be corrected the errors and mistakes arising from the ignorance or negligence of the clerk, and placing the cause properly before the court. It is therefore ordered that the motion on the part of the appellees to dismiss the cause from the docket be overruled, and that a writ of certiorari be directed to the clerk of the District Court of Fannin County, commanding him to make a more full and perfect transcript of the record of the proceedings in the said case; provided, however, that costs of suit be paid by appellants on or before the 1st day of October next. And should the same not be paid on or before the time specified and satisfactory evidence thereof produced to the clerk of the said district court, that then and in that case the appeal be considered as dismissed; and the said clerk be required to issue execution against the appellants, as if no appeal had been taken; and the clerk of the Supreme Court is required to seal up the original papers sent up in this cause and place them in the hands of some safe person, for transmission to the clerk of the district court of the said county.

*Overruled.*

## No. XXII.

### SOLOMON WOLFE v. ROBERT STEPHENS.

*Appeal from Nacogdoches County.*

JONES (WILLIAM J.), JUSTICE.—This was a suit instituted by Robert Shephens against Solomon Wolfe, upon a note of said Wolfe payable to the order of Washington Dorsey, and indorsed by him, without date, to the appellee.

The appellant filed with his plea certain interrogatories under oath, to ascertain whether the appellee was the owner of the note sued on; and if not, the appellee was called upon to disclose the real owner of the same. This evidence was alleged to be material to his defense.

---

court out of which the execution issued. De Witt v. Dunn, 15 T., 106; Griswold v. Chandler, 22 T., 637; De la Garza v. Booth, 28 T., 478; Robinson v.

At the trial in the court below, the plaintiff's counsel moved to strike out that portion of the defendant's plea which charged that the plaintiff was not the owner of the note in suit, together with the interrogatories propounded to plaintiff. The court sustained the motion of the plaintiff's counsel; from which judgment the defendant has appealed to this court.

That portion of the appellant's plea which sets up that the plaintiff is not the owner of the note sued on is a plea in abatement, but not verified according to the statute. This court has already decided, in Weatherford v. Tinnin, that "the denial of the right of the plaintiff to sue should be taken advantage of by plea in abatement, *supported by oath or affirmation.*" The plea in the case before us is not so supported, and was properly overruled by the court.

The interrogatories propounded by the defendant to plaintiff sought to obtain evidence to support the plea in abatement. That plea having been overruled, any testimony offered to sustain it should have been rejected. The interrogatories were therefore properly stricken out as irrelevant to the issue before the court.

The judgment must be affirmed.

*Affirmed.*

## No. XXIII.

### THE REPUBLIC OF TEXAS v. BAILY INGLISH ET AL., HEIRS OF JOSEPH INGLISH, DECEASED.

(See Note 73.)

*Appeal from Lamar County.*

JONES (WILLIAM E.), JUSTICE.—This was a suit commenced in the District Court of Lamar County by the appellees, as heirs at law of Joseph Inglish, deceased, for a league of land, under the provisions of the eleventh section of the Act of 4th February, 1841, entitled "An act supplementary to an act to detect fraudulent land certificates," etc. The petitioners set forth that their ancestor immigrated to that part of Texas, now known as Lamar County, about the 25th December, 1835, and there resided until his death, which occurred on the 17th February, 1836; that he was a married man and the head of a family. On the trial of this case at the September term, 1843, of the district court, the jury returned the following verdict: "We the jury find for the plaintiffs and say that the facts contained in their petition are true." Upon the verdict a judgment was rendered in favor of the plaintiffs for one league and labor of land, and a certificate ordered to issue therefor; from which judgment an appeal was taken to this court on behalf of the Republic.

---

Schmidt, 48 T., 13. Suit by scire facias to revive a judgment must be brought in the court where the judgment was rendered. Waller v. Huff, 9 T., 530; Perkins v. Hume, 10 T., 50; Masterson v. Cundiff, 58 T., 472; Schmidtke v. Miller, 71 T., 103. An action of debt on a judgment may be brought in county where defendant resides. Townsend v. Smith, 20 T., 465; Johnson v. Skipworth,

In the decision of this case two questions present themselves for our consideration:

1.   Was Joseph Inglish entitled to land as a citizen of this Republic, under the Constitution and laws?   And if not,

2.   Was he entitled to land as a colonist or settler, under any law of the State of Coahuila and Texas?

The appellees in this case, claiming as the heirs and representatives of Joseph Inglish, can recover only what their ancestor himself was entitled to at the time of his death.   Section 10 of the general provisions of the Constitution declares that all persons (Africans, the descendants of Africans, and Indians excepted) who were residing in Texas at the date of the declaration of independence, shall be considered citizens of the Republic, and that all such who shall not have received lands as colonists shall be entitled, if heads of families, to one league and labor each.   The right to land, predicated upon citizenship in this Republic, can not attach back to a period anterior to the declaration of independence on the 2d day of March, 1836.   That is the time fixed by the Constitution at which residence confers citizenship, and as Joseph Inglish was dead before that day, no claim to land could possibly have accrued to him under that provision of the Constitution, as a citizen of the Republic.

We are then led to the second inquiry, whether under any law of the State of Coahuila and Texas he was entitled to lands as a colonist or settler?

The general colonization law of the 24th day of March, 1825, Decree No. 16, of the Laws of Coahuila and Texas, was repealed by article 38 of Decree No. 190, of the date of 28th April, 1832, and a system of colonization established in many respects different from that of 1825. This second colonization law was itself repealed by article 29 of Decree No. 272, of the date of 26th of March, 1834, and by article 30 it is declared that no further colonization contracts shall be made.   By this decree a new system for the disposition of the vacant lands of the State by sales at public auction was established and substituted for the old plan of colonization.   The repealing decrees, referred to above, severally declare that all contracts made under the provisions of the repealed decrees shall be fulfilled by the government; but it is not alleged that the deceased Joseph Inglish was brought into the country as a colonist, or received as such by any empressario, in fulfillment of any subsisting colonization contract entered into while those laws were in force.

Decree No. 309, of the date of 2d May, 1835, article 1, declares:

---

59 T., 473.   The term "cause of action," as used in statutes regulating venue, means not only the right which plaintiff has, but also any injury thereto, and suit may be brought in county where defendant resides for damage to land in a foreign country.   Armendiaz v. Stillman, 54 T., 623; H. & T. C. Ry. Co. v. Hill, 63 T., 381. Attachment suit should be brought in county where defendant resides, though the property to be attached is in another county.   Gibbs v. Petree, 7 T. C. A., 526.   As space does not permit full notes on the exceptions to the general rule that suit must be brought in the county where defendant has his domicile, the investigator is referred to the notes on same to the following cases:   Exception 1, 9 Texas, 78; exception 2, 6 Texas, 275; exception

"That all persons, or families *now residing* in Texas, and who have emigrated *previous* to the date of this law for the purpose of settling in the country, and who have not received lands according to the colonization laws, are hereby declared to be entitled to the portions designated by the law of the 24th March, 1825, provided that they possess the qualifications therein prescribed."

This decree secures lands to those only who were residing in Texas at the date of the decree, and had emigrated previously thereto. It makes no provision whatever for those who might emigrate thereafter; and as Joseph Inglish, through whom the appellees claim, did not arrive in the country until the month of December succeeding the passage of this law, he could not become a beneficiary of its provisions.. This being the last legislative act of Coahuila and Texas granting land to emigrants, we are led to the necessary conclusion, that at the time of his death Joseph Inglish was not entitled to land under any law of the State of Coahuila and Texas.

However hard it may seem to exclude the heirs of those who arrived in this country subsequent to the 2d day of May, 1835, and died prior to the declaration of independence, from the benefits of the profuse liberality of the Republic in the distribution of her public lands, yet it is not in the power of this court to give vitality to a claim which has no foundation in the laws. We know of no remedy for such cases, except legislative action. Let the judgment of the court below be reversed and annulled, and the appellees pay the costs.

*Reversed.*

## No. XXIV.

### SADDLER v. THE REPUBLIC.

#### (See Note 74.)

*Appeal from Lamar County.*

OCHILTREE, JUSTICE.—At the fall term, 1843, of the District Court of Lamar County, the grand jury of the said county found a true bill against Hiram Saddler, Thomas Doss, Joshua Dillingham and C. W. Saddler for an affray. At the next spring term the district attorney entered a discontinuance (nolle prosequi) as to Dillingham. The other defendants being in custody pleaded "not guilty." A jury were impaneled, who after hearing the evidence, etc., returned into court this verdict: "We the jury find that Hiram Saddler is guilty of an affray. A. G. Kimball, foreman."

Reasons in arrest of judgment were filed and overruled by the court below, who fined Saddler $10 with the costs.

---

3, 13 Texas, 492; exception 4, 4 Texas, 289; exception 5, 11 Texas, 273; exception 6, 3 Texas, 145; exception 7, 9 Texas, 504; exception 8, 62 Texas, 647; exception 9, 18 Texas, 118; exceptions 10, 11 and 12, 9 Texas, 78; exception 13, 56 Texas, 130; exception 14, 5 Texas, 471; exception 15, 13 Texas, 320; exception 16, 32 Texas, 578; exception 17, 3 Texas, 429; exception 18, 61 Texas, 576;

From this decision, an appeal has been taken to this court.

Affray is an offense at common law.

The district attorney, who drew this indictment, has thought proper slightly to vary from the usual precedent, and in so doing has certainly not strengthened his indictment. He charges, that "Hiram Saddler and Thomas Doss and Joshua Dillingham and Westly Saddler, late of said county, on the first day of February, in the year of our Lord one thousand eight hundred and forty-three, being then and there unlawfully assembled together, in a warlike manner, in a certain highway, the same being a public road, in the county of Lamar aforesaid, unlawfully and to the great terror and disturbance of divers good citizens, then and there being, did quarrel and fight and make an affray," etc. Now as quarreling and fighting, eo nomine, are not offenses known either to the common law or to the statutes of the Republic of Texas, we will treat them as surplusage, which will leave the indictment single and in strict conformity to the precedents and law.

The reasons filed in arrest of judgment and depended on here resolve themselves into one only, viz: That H. Saddler could not be considered guilty of an affray, as the others with whom he had been indicted had not been also found guilty; that an affray can never take place unless the parties fight by consent.

We think differently. Saddler might well be convicted although the men with whom he fought were acquitted. It is not essential, to constitute an affray, that the fighting should be by consent of the parties concerned. It is not the mere fighting of the persons engaged that constitutes the gravamen of this offense. "It is because the violence is committed in a public place and to the terror of the people, that the crime is called an affray instead of assault and battery." See Cash v. State, 2 Tenn., 198, 199; Hawkins' Pleas of the Crown, chaps. A. and B., and "Affrays."

The judgment of the court below must be in all things affirmed.

*Affirmed.*

## No. XXV.

### CHARLES CHEVALIER V. DAVID RUSK.

(See Note 75.)

*Appeal from Nacogdoches County.*

JONES (WILLIAM J.), JUSTICE.—The facts presented by the record in this case show, in substance, that David Rusk, the sheriff of Nacogdoches County, received from Charles Chevalier two several executions, issued by a justice of the peace of said county, in the name of said

exception 19, 4 Texas, 289; exception 20, 5 Texas, 471; exceptions 21 and 22, 66 Texas, 363; exceptions 23, 24, 25 and 26, 50 Texas, 181. As to where injunctions to stay execution must be sued out and made returnable, see note to 2 Texas, 259.

Chevalier, against A. H. Bell and Charles Hotchkiss et al.; which executions were placed in the hands of the said Rusk, sheriff as aforesaid, to be served of the goods and chattels of the said Bell and of the said Hotchkiss and others. The petition of the appellant further alleges that a summons issued by a justice of the peace of said county, in the name of Charles Chevalier against Jacob Garrett, was delivered to the appellee, as sheriff of Nacogdoches County, to serve as the law directed; *all* of which writs he refused to execute.

To the plaintiff's petition the defendant demurred (and issue joined thereupon), which was sustained by the court below.

The act of Congress of 1836, which empowers the sheriffs to receive all process directed to them from a magistrate's court, is compulsory and without qualification; "to execute *all* writs and other process to them legally issued and directed from any justice of the peace or court of record, and shall make due return thereof to the proper court on the day to which the same is returnable; and any sheriff who shall fail herein, or make a false return, shall be liable (in addition to other penalties) to the party injured, for all damages he may sustain thereby."

Our statutes (in addition to the ordinary duties of the sheriffs) impose many requirements not known to the common law, and the duties of sheriffs in some counties have, from their multiplicity and petty character, become extremely onerous. Under such circumstances, cases may arise where those officers might be compelled to omit the performance of one duty in order to execute the other faithfully. As in the case of an order from a magistrate to serve his summons, whilst the sheriff was in attendance upon the district court, or executing its commands, or discharging any duties devolved upon him by courts whose jurisdiction is coextensive with the county. The Constitution, in creating the office of sheriff, does not impose the obligation upon the officer to make a deputy; and although, under the laws, he has power to appoint his deputy, we know of no authority to compel him to do so.

In the case before us there is no allegation in the petition of the plaintiff that the sheriff had a deputy; but it distinctly alleges the delivery of the several writs, emanating from the magistrates, to the sheriff himself, who refused to execute them. The act of Congress defining the duties of sheriffs, from which an extract has been made, is broadly phrased, and by its strict letter would leave the sheriff no room to justify his refusal to obey the mandate of a magistrate, although it might impose upon him a double duty to be performed at one and the same time. But it is our place to give this statute a fair and liberal interpretation; and upon the old legal maxim, that "no man is required

---

**Note 59.**—McKinney v. Peters, p. 545.

[1] Words as "executor," etc., held merely discriptio personae, and the contract with or the act that of the person described. Gayle v. Ennis, 1 T., 184; Groce v. Herndon, 2 T., 410; Lipscomb v. Ward, 2 T., 277; Claiborne v. Yoeman, 15 T., 44; Traynham v. Jackson, 15 T., 170; Gibson v. Irby, 17 T., 173; Hall v. Pearman, 20 T., 168; Morrison v. Hodges, 25 T. Supp., 176; Nelson v. Bagby, 25 T. Supp., 305; Rider v. Duval, 28 T., 622; Gregory v. Leigh, 33 T., 813; Stevens v. Morris, 35 T., 709; Crawford v. Wilcox, 68 T., 109; Round-

to perform impossibilities," we are led to the decision that the sheriff may show, in avoidance of the several penalties imposed by law for a failure to execute and return process emanating from a magistrate's court, that he had other duties of a paramount character to discharge, which rendered it *impossible* for him to execute and return such process in due course of law.

This defense is matter of evidence for the decision of a jury, under the charge of the court, as to what may be admitted to establish a legal excuse.

Another cause of demurrer, taken by the defendant in the court below, is, that the plaintiff can not blend several causes of action in one suit.

In the case of the Duke of Bedford v. Alcock, 1 Wilson, 252, the chief justice who delivered the opinion of the court adjudged, that although the plaintiff had declared upon *three* contracts (one *implied* and two *express* contracts) they must give judgment for the plaintiff, as the *process* and *judgments* in all the three counts were the same. We there find the broad dictum, that debt and detinue may be joined although the pleas are different; and in detinue, the judgment must vary from that in debt.

In Cecil v. Briggs, 2 Tenn., 639, two suits were brought, and a rule obtained to show cause why they should not be consolidated. It was objected against the rule, that it was not necessary but inconvenient for the plaintiff in all cases to consolidate his several causes of action, though they were of the same nature and accrued at the same time. The court said "that, as by the rules of law the plaintiff might have comprised both his causes of action in one suit, it was oppressive to sue out two writs at the same time. That the possibility of this rule being attended with any inconvenience to the plaintiff was no answer to this application." The plaintiff was required to consolidate and to pay costs.

The civil law authorities have kept in view the same principle here decided, and the general rule, laid down by them, is, that all demands not inconsistent with each other must be joined in one action. Both systems equally agree in condemning a multiplicity of suits and an accumulation of costs.

Under our statutes, intended to simplify the rules of pleading, no distinctions as to forms of action are recognized, and a great latitude, not tending to manifest confusion, may be allowed in the joinder of actions.

This court has already decided, in Binge and Blair v. Smith, that where the plaintiff has two causes of action which may be joined in one,

tree v. Stone, 81 T., 299; Warren v. Harrold, 92 T., 420; Dallas Co. v. Club Land and Cattle Co., 95 T., 200; Horton v. Garrison, 1 T. C. A., 31; Llano Improvement Co. v. Cross, 5 T. C. A., 175; Elwell v. Tatum, 6 T. C. A., 397; Wilson v. Hall, 13 T. C. A., 489; Club Land and Cattle Co. v. Dallas Co., 26 T. C. A., 449; Fire Ass'n v. Laning (T. C. A.), U. R. C., 1895; Brown v. Adams (T. C. A.), U. R. C., 1900. Administrator may sue, without reference to his fiduciary character, when the debt is made payable to him as such. Gayle v.

he ought so to proceed, and if he sever he should be *compelled* to consolidate. This decision concurs with the general rule laid down by the common law authorities, which is stated to be, "that when the *same plea* may be pleaded, and the *same judgment* given on all the demands, or when the *same judgment* is to be given, though *the pleas be different,* they may be joined."

We are of opinion that the judgment of the court below upon the demurrer should be annulled and reversed, and the cause remanded to the District Court of Nacogdoches County, with instructions that the defendant be allowed to amend his pleadings and proceed to trial upon the merits of the case.

*Reversed and remanded.*

Judge Wm. E. Jones says: "I dissent from much of the foregoing opinion. I agree with so much of it as relates to the joinder of the different causes of action in the petition, but do not agree to so much of it as decides that a sheriff is responsible for refusing to execute process in civil cases issued by justices of the peace. I think he may execute such process, and if he receives it he will be responsible, unless for good cause shown for its non-execution, but that he can not be compelled to receive it."

Judge Jack says: "I have no doubts, under our statutes, that sheriffs are bound to execute process issuing from justices of the peace and are responsible to any party injured for a refusal to do so; unless it can be shown that some sufficient reason existed for their failure to serve such process. I doubt as to the correctness of the joinder of the several causes of action in the present case."

No. XXVI.

ALLEN v. SCOTT ET AL.

*Appeal from Bowie County.*

MORRIS, JUSTICE.—This cause originally commenced in the District Court of Bowie County, and was ordered to be transferred by the judge of that court to the southern division of Red River County, which has been organized into a judicial district by the last Congress. The court is of opinion that this is such a judgment as can be appealed from. They further think, that the law organizing these judicial districts is unconstitutional and void, because it violates the spirit of the Constitution and is at war with its plain meaning and intent, in this: That from the Constitution it is plain that a district court should be held in

---

Ennis, 1 T., 184; Groce v. Herndon, 2 T., 410; Claiborne v. Yoeman, 15 T., 44; Nelson v. Bagby, 25 T. Supp., 305; Moss v. Witcher, 35 T., 388; Llano Improvement Co. v. Cross, 5 T. C. A., 175, 178; Exell v. Edwards, 2 App. C., sec. 769; Fire Ass'n v. Laning (T. C. A.), U. R. C., 1895.

each county of the Republic; the officers incident to that court being expressly provided for and required in each county.  Vide, art. 4, secs. 6-12.

That these officers are limited in number and have special duties, not only under the provision of the statutes but also under the intendment of the Constitution itself.

That this law requires a clerk, who is the custodian of the court's records, to keep them at several and distinct places at one and the same time, which compels him to the appointment of a deputy, which Congress can not do; doing indirectly what they can not do directly, in evasion of the Constitution.  That the process of a court of general jurisdiction over a whole county must extend to each part and portion of that county.

This law recognizes the courts held in the various divisions of a county as being identically the same; but restrains its process and powers within other than the county limits.

If this power exists to extend this privilege to one precinct, it must exist to extend to an indefinite number of precincts; and a court could be held at each man's house in every county.  But the Constitution having prescribed the requisite number of persons and extent of territory necessary to the establishment of a county, and each county being entitled to a court, a limit is fixed to the power of Congress in that respect; which by means of this law they attempt to evade and set at naught.

Even though the question of public policy be not a matter for judicial interference, still when an act is violently at war with such policy, it would afford a strong argument against its constitutionality, if the power to pass such act be not expressly given; and finally, because the law which has been passed is so foreign from even any inference that could be drawn from the Constitution, that we can not presume that it ever entered into the imagination of the framers of that instrument that such an act would be attempted; and hence the only difficulty of proving its unconstitutionality.  For these and other grounds we decide that law to be unconstitutional, and order and adjudge that the judgment of the court below, transferring this cause to the said district, be set aside and annulled, and the case remain for adjudication in the records of Bowie County, where it was properly brought.

An extended opinion in this cause will be filed in the records of the court at or before the next term of this court; this being intended merely as an abstract of some of the points on which it will be based.

Judge Wm. E. Jones says:  "I give no opinion in this case."

² Apparent legal holder or owner may sue in his own name, though actual ownership is in another.  Thompson v. Cartwright, 1 T., 87; Gayle v. Ennis, 1 T., 184; McMillan v. Croft, 2 T., 397; Groce v. Herndon, 2 T., 410; Hays v. Cage, 2 T., 501; Fowler v. Willis, 4 T., 46; Andrews v. Hoxie, 5 T., 171; Mertel v. Hernsheim, 5 T., 205; Thomas v. Young, 5 T., 253; Knight v. Holloman, 6 T., 153; Butler v. Robertson, 11 T., 142; Frazier v. Moore, 11 T., 755; De Cordova v. Atchison, 13 T., 372; Guest v. Rhine, 16 T., 549; Wimbish v. Holt, 26 T., 673; Rider v. Duval, 28 T., 622; Barnett v. Logue, 29 T., 282; Zachary v.

## No. XXVII.

### WM. H. BINGE AND JAS. BLAIR v. SAMPSON SMITH.

(See Note 76.)

*Appeal from Red River County.*

JONES (WILLIAM J.), JUSTICE.—This case is brought up by writ of error from the District Court of Red River County, upon a judgment rendered therein at the spring term of 1844, and the record presents the following facts: Suit was instituted by Sampson Smith against William H. Binge as the maker, and James Blair as indorser of a promissory note, made by said Binge to said Blair and indorsed by him to the defendant in error, for the sum of $300, payable on or before the 1st day of January, 1843. The defendants, after being duly cited, failing to appear and answer the plaintiff's petition, judgment by default nisi was rendered against them.

Upon an inspection of the record by the plaintiffs in error several grounds are assigned as causes of reversal of the judgment rendered in the district court. We will only examine the first and second assignments of error.

1. The cause of action being a joint contract made by Binge and Titus, the said Titus, or in case of his decease, his legal representative should have been sued; or the plaintiff's petition should have averred that some legal steps had been taken against the said Titus, or in case of death, against his representative.

2. That the maker and indorser, although sued, could not be properly joined in the same action.

The first ground of error is not sustained either by the common law or by out statutes relating to successions. At common law it is clear, in case of a *joint* contract, if one of the parties die the survivor alone can be sued. In equity the principal and the legal representative of the deceased security may be joined; but as the plaintiff had his option, and he alone can be injured by the failure to join the principal and the representative of the deceased security in his action, it can not be considered error in the plaintiff to sue the principal alone. The security being sued and the principal omitted, might be cause of error, without an averment sufficient in law to excuse such omission. But the seventeenth and eighteenth sections of the act of Congress regulating the settlement of successions, require that every claimant against a succession shall present his claim to the executor or administrator before suit is commenced, and if accepted by him, shall be ranked among the acknowledged debts against the estate. If so accepted and placed among the acknowledged debts of the succession, the plaintiff could not have *sued* the representative of Titus.

Gregory, 32 T., 452; Moss v. Witcher, 35 T., 388; Rodgers v. Bass, 46 T., 505; Jackson v. Elliott, 49 T., 62; Allen v. Pennell, 51 T., 165; Brown v. Cheno-

Upon the second assignment of error, that the maker and indorser could not be properly joined in the same action, the common law authorities, although well settled, are not applicable to this case; and the court here would not feel itself authorized to vary a practice established by such high authority, if it were not that the spirit and intent of our own local legislation justify us in making the departure.

The acts of Congress of December 22, 1836, and January 25, 1840, although they do *not require* the maker and indorser of a promissory note to be sued together, yet they clearly indicate, from their peculiar phraseology, that they *may* be joined in one and the same action, if sued *simultaneously*. The language of the first statute is, that "no person shall be sued as indorser or security, unless suit has been first or simultaneously commenced against the principal; provided the principal is within the jurisdiction of the courts of the Republic."

Indorsers and securities seem, by this statute, to have been placed upon the same footing. It can not be doubted that the principal and security must be joined in the same action, if both be living. May we not then fairly raise the presumption that the statute, in coupling security and indorser, intended to give the same remedy against maker and indorser as against principal and security, if both were sued *simultaneously?*

But the statute was not considered by Congress a sufficient protection to securities and indorsers, and the act of January 25, 1840, dispensing with the necessity of protest, after referring to drawers, indorsers and assignors, enacts, that "every such party (meaning drawers, indorsers and assignors) shall be held responsible as *security* for the final payment of a promissory note, check, draft," etc. This statute, so obviously intended to guard securities and indorsers against the delays and frauds of the holders of negotiable or assignable paper, recognizes the indorser as a *security* in express terms; and to that extent makes the law appertaining to principal and security equally applicable to drawer and indorser.

The statute of 1840 does not imperatively require, as it does not expressly exclude, the joinder of the maker and indorser. Under its provisions, the maker may be sued at the *first* term of the district court (or at the second term for good cause of failure shown) after the obligation falls due, and the latter may be cited at any subsequent term; but under the provisions of the act of 1836, still in force, if the maker and indorser be sued *simultaneously,* they may and should be joined in the same action.

This practice would prevent a multiplicity of suits and an accumulation of costs, which courts of justice should ever seek to avoid.

worth, 51 T., 469; Matlock v. Glover, 63 T., 231; Roundtree v. Stone, 81 T., 299; Allison v. Ins. Co., 87 T., 593; McCarty v. Brackenridge, 1 T. C. A., 170; Llano Improvement Co. v. Cross, 5 T. C. A., 175; Krueger v. Klinger, 10 T. C. A., 576; Sparks v. Coats, 22 T. C. A., 455; Sanders v. Atkinson, 1 App. C., sec. 1326; Wheeler v. Roberts, 2 App. C., sec. 128; Jensen v. Hays, 2 App. C., sec. 567; Ezell v. Edwards, 2 App. C., sec. 769.

' The joinder of the maker and indorser does not preclude each party from setting up his own defense; and the court will render such judgment against each as the facts and the law of the case may require.

The court here settles it as a matter of practice, under the provisions of our statutes, that the drawer and indorser of a promissory note, bill of exchange, check, draft or other mercantile negotiable instrument, may and should be joined in the same action, if both be sued *simultaneously*.

And where separate actions are brought at different terms in the same court, the plaintiff may be required to consolidate, in order to save costs; unless in the opinion of the presiding judge manifest injustice will thereby be done to one or other of the defendants.

It is therefore considered here, that there is no sufficient error apparent upon the face of the record from the court below to reverse, but that the judgment of the said court should be affirmed.

*Affirmed.*

Judges Morris and Baylor say: "Upon the first point decided in this opinion we concur with our brother judges. On the second, we totally dissent; and are of opinion that the parties defendant were improperly joined, which would be sufficient cause for reversal."

## No. XXVIII.

### SIMMS AND SIMMS v. PRICE.

*Appeal from Red River County.*

MORRIS, JUSTICE.—James W. and Sam W. Simms allege indebtedness on the part of one Price to them, in an amount exceeding $100, for goods, wares and merchandise purchased and received by said Price from them, and also for money advanced for his (Price's) use and benefit. They allege that no part of this amount has been paid by them; but that a certain bank bill, which is appended to their petition, had been received by them from Price; which bill they now offer and had previously offered to return, averring the same to be counterfeit. Price, being duly served, appeared and filed his answer, denying the allegations in the petition. The cause was submitted to a jury, who rendered a verdict for the plaintiffs in the sum of $100, with interest; on which verdict a judgment was entered, and an appeal prayed by defendant.

Note 60.—Scott v. Maynard, p. 548.

[1] Act of January 18, 1840 (Gammel's Laws of Texas, vol. 2, p. 28), had no application to contracts made prior to its passage. Hodges v. Johnson, 15 T., 570. Before its passage, parol sales of land accompanied by possession were valid. Briscoe v. Bronaugh, 1 T., 326; Lynch v. Baxter, 4 T., 431; Monroe v. Searcy, 20 T., 348; Sullivan v. Dimmitt, 34 T., 114; Downs v. Porter, 54 T., 59; Barrett v. Spence (T. C. A.), U. R. C., 1902. Under decree of March 24, 1825 (Gammel's Laws of Texas, vol. 1, p. 125), and prior to decree of March 26, 1834 (Gammel's Laws of Texas, vol. 1, p. 357), sales of land and contracts to sell by colonists, before issuance of title, occupation and cultivation for six years, were void. After decree of March 26, 1834, and up to date of the Constitution of the Republic, they were void if made before issuance of title.

This cause is submitted to the court on the facts, a statement of which is embodied in the record. Without going into an examination of those facts, it is only necessary for us to say, that this court has repeatedly decided that they will not set aside the verdict of a jury unless the same be clearly and manifestly against the evidence adduced before them.

The testimony embodied in this record, although somewhat contradictory, still presents a case which it is peculiarly the province of the jury to investigate and determine, and we can see no reason to disturb their verdict. It is therefore considered by the court, that the judgment below be in all things affirmed.

*Affirmed.*

Judge Ochiltree says: "The weight of testimony presented to this court is strongly in favor of the fact that the bill sued for is genuine. With regard to the character of the witnesses we of course know nothing. If the witnesses were of equal character, the verdict of the jury was certainly against the weight of testimony. I therefore think that the judgment should have been reversed and the case remanded."

## No. XXIX.

### LEE MORRIS v. ASHLEY AND COLIN McKINNEY.

*Appeal from Bowie County.*

MORRIS, JUSTICE.—The plaintiff below, who is the appellant in this court, filed his bill, averring that in the year 1835 he came to the county of Red River, in the Republic of Texas; occupied, improved and cultivated a piece of land in that portion of said county known now as the county of Bowie; that he continued to occupy and cultivate or cause to be cultivated said land from that period until the year 1842, and that he is still in possession of the same; that he has obtained a certificate from the board of land commissioners, organized under the laws of this Republic, for one-third of a league of land as a single man, and that under the Constitution and laws of the Republic he is entitled to have the same located and surveyed, so as to include his said improvements; that he has agreed on conditional lines with certain individuals (naming them) as the boundaries of said survey. But that Colin and Ashley McKinney, combining together fraudulently to injure him, set up a claim to said land, by virtue of fraudulent surveys made on two certain fraudulent certificates, purporting to have been issued by one Benjamin R. Milam, under and by authority of the Mexican government, to the said McKinneys. That the said surveys cover all the land claimed by

Hunt v. Robinson, 1 T., 748; Robbins v. Robbins, 3 T., 496; Spillers v. Clapp, 3 T., 498; Desmuke v. Griffin, 10 T., 113; Emmons v. Oldham, 12 T., 18; Box v. Lawrence, 14 T., 545; Flanikin v. Fokes, 15 T., 180; Clay v. Cook, 16 T., 70; Soye v. McCallister, 18 T., 80; Atkinson v. Bell, 18 T., 474; Causici v. La Coste, 20 T., 269; Williams v. Chandler, 25 T., 4; Clay v. Clay, 26 T., 24; Ledyard v. Brown, 27 T., 393; Clay v. Clay, 35 T., 509; Jones v. Huff, 36 T., 678; Holmes v. Johns, 56 T., 41; Cook v. Lindsey, 57 T., 67; Grant v. Wallis, 60 T.,

petitioner, a conditional line having been agreed upon by the McKinneys, dividing the land in two parts; and that the said McKinneys are endeavoring to procure patents for the same from the Commissioner of the General Land Office. He therefore prays that they be made parties defendant to his bill; that an injunction issue restraining them from further proceedings; that they be required to set forth what right, title or claim they have to this land; and that the petitioner's right to a location and survey of the same be adjudicated and established.

On this petition an injunction was ordered by the judge below. The defendants were regularly summoned and appeared and answered by filing a general demurrer, with special causes assigned, and also an answer to the merits. The demurrer was sustained in the court below and judgment entered up, dissolving the injunction and dismissing the petition; from which judgment an appeal was taken to this court.

The grounds of demurrer are:

1. That the plaintiff has no cause of action whatever.

2. Multifariousness in the petition; in the joinder of two several causes of action, which should have formed the basis of separate and distinct actions at law.

3. Improper joinder of defendants; no joint interest having been alleged in them to the land claimed by plaintiff.

We will direct our attention to the two latter grounds of demurrer alone, they having been the only points relied on by counsel for a reversal or affirmance of the judgment below. And these two are so closely allied, that the decision of one almost by necessity involves that of the other. On the subject of multifariousness, we can only arrive at correct conclusions by applying the general principles, established by various authorities, to the particular case under consideration, and determining therefrom whether there is such a misjoinder in parties, either as to interest or person, as would warrant the court in sustaining an exception on that ground. In 2 Maddock, page 294, it is laid down, "that the courts will not permit a plaintiff to demand by one bill several matters of different natures against several defendants;" and the reason given for this rule is the plain and obvious one, that thereby costs might unjustly and onerously accumulate against a party by the delay incident to the adjudication of the rights of a codefendant with whom he was in no way interested.

In Comyn's Digest, 7, B. Chancery, page 2, the principle is expressed, that all interested in the "demand" ought 'to be parties in equity; and in examining the various expressions of various judges and authors on this subject, we might probably arrive at the general principle, as laid

350; Brown v. Simpson, 67 T., 225; Sideck v. Duran, 67 T., 256; Houston v. Killough, 80 T., 296; Baldwin v. Goldfrank, 9 T. C. A., 269; Clay v. Clay, 2 U. C., 357; Buchanan v. Park (T. C. A.), U. R. C., 1896. Sale was sufficient consideration for a new contract and could be ratified after removal of prohibition. Hunt v. Turner, 9 T., 385; Burleson v. Burleson, 11 T., 2; Atkinson v. Bell, 18 T., 474; Clay v. Clay, 35 T., 509; Jones v. Huff, 36 T., 678; Grant v. Wallis, 60 T., 350; Williams v. Wilson, 76 T., 69; Sewell v. Laurence, 2 U. C., 376. Colonists could alienate at expiration of six years. Desmuke v. Griffin,

down by Calvert on Parties, page 6, chapter 1, section 1, "that all interested in the object of the suit should be parties." In the case of the Mayor of York v. Pilkington a general right of fishing was established against many persons, unconnected and claiming several and distinct rights therein; on the principle, "that there was one common interest in all the parties defendant, centering in the point in issue." Apply these principles to the case under consideration. The "object" of the suit is to establish the plaintiff's right to an entire tract of land; parts of which "entirely" are claimed by defendants. The point in issue is the correctness of the *plaintiff's claim;* and a common interest, on the part of the defendants, center in that point. The decree of the court, establishing that right for the plaintiff, could be given without embarrassment or difficulty, and multiplicity of actions, which is abhorrent to the principles of equity, avoided. We can therefore have but little difficulty in arriving at the conclusion that the parties are properly joined, and that the judge below erred in sustaining the demurrer.

It is ordered, decreed and adjudged, that the judgment in the court below be annulled and reversed; that the demurrer be overruled and the cause remanded to proceed upon the merits.

*Reversed and remanded.*

## No. XXX.

### CLEMENT R. JOHNS v. THE REPUBLIC OF TEXAS.

#### (See Note 77.)

*Apeal from Red River County.*

HEMPHILL, CHIEF JUSTICE.—The appellant instituted suit to obtain a certificate for one-third of a league of land, which he claimed to be due to one James W. Herron, the original vendor of the headright. Judgment was given for the Republic and the following bill of exceptions was filed:

"In this case the presiding judge charge the jury, that before the plaintiff can recover it is incumbent on him to prove that the original claimant, Herron, was a resident citizen of Texas at the time the application for a land certificate was made before the board of land commissioners; to which the plaintiff excepts and prays that this exception form a part of the record."

We are of opinion that the judge of the court below in his charge to the jury did not err. The land law of 1837, in section 12, requires the purchaser of a headright to prove, among other matters, "that the person represented as entitled to a grant is actually a resident of the Republic at the time the application for the grant is made." In the cases of

10 T., 113; Clay v. Clay, 16 T., 70; Atkinson v. Bell, 18 T., 478; Clay v. Clay, 26 T., 24; Thomas v. Moore, 46 T., 433. Under decree of 1834, colonist could sell, subject to occupation and cultivation by his grantee. Emmons v. Oldham, 12 T., 18; Atkinson v. Bell, 18 T., 474; Johnston v. Smith, 21 T., 722; Clay v. Clay, 26 T., 24. And so could a grantee of a concession under decree

Board of Land Commissioners v. James Reily, Assignee, and of The Same v. Jesse Walling, we have decided that this provision of the statute was not in conflict with the Constitution. The question of discrepancy between the two instruments has not perhaps yet been argued with the elaborate effort or been subject to the thorough investigation which its importance and the magnitude of the interests involved would seem to require. The principles laid down in the cases above cited, not having been impugned in argument, will not be re-examined. They are decisive of the exception taken in this case. We are of opinion that there was no error in the charge of the judge, and it is therefore ordered, adjudged and decreed that the appeal be dismissed.

## No. XXXI.

### HARDIN v. TITUS.

#### (See Note 78.)

*Appeal from Red River County.*

OCHILTREE, JUSTICE.—This suit was brought for the recovery of a note, dated: "Hernando, Miss., Nov. 11, 1839.—On or before the first day of January, 1842, I promise to pay John L. Brown, seven hundred dollars, in the currency of this country, for value received of him. (Signed) John Hardin."

This note was assigned to the plaintiff by indorsement, in June, 1841.

The petition contains the usual allegations in a suit instituted by the indorsee of a promissory note against the maker, without any special averment respecting the currency in which the note purports to be made payable; and concludes with an allegation that the defendant has never paid the demand, and with a prayer for process and judgment against the defendant for the amount of the note with interest and costs.

The answer consists of a demurrer which avers that the plaintiff "has not set forth in his petition such a cause as entitles him to judgment;" also of a plea, "that on the day the note became due the defendant tendered to the plaintiff the full amount demanded by said note, which he refused to accept; and that the defendant is still ready to pay the plaintiff the same, to wit, the sum of seven hundred dollars in bank notes of the Bank of Mississippi."

The petition in this case contains, we think, all the necessary allega-

---

of 1825. Hancock v. McKinney, 7 T., 384; Jenkins v. Chambers, 9 T., 167; Murchison v. Hall, 10 T., 461; Ryan v. Jackson, 11 T., 391; Portis v. Hill, 14 T., 69; Marlin v. Stockbridge, 14 T., 165; Clay v. Holbert, 14 T., 189; Harris v. Hardeman, 15 T., 466; Fulton v. Duncan, 18 T., 34; Martin v. Parker, 26 T., 253; Manchaca v. Field, 62 T., 135. Under decree of January 4, 1823 (Gammel's Laws of Texas, vol. 1, p. 27), colonist could alienate at any time after receiving his grant. Portis v. Hill, 14 T., 69; Thomas v. Moore, 46 T., 433; Summers v. Davis, 49 T., 541. Title obtained under Act of December 14, 1837 (Gammel's Laws of Texas, vol. 1, p. 1404), were not affected by inhibition in colonization laws, prohibiting sale for six years. Babb v. Carroll, 21 T., 765, 769; Moore v. Bullard, 24 T., 149; Clay v. Clay, 35 T., 509; Jones v. Huff, 36 T., 678.

tions to sustain an action on a note of the description sued on. It would be different if the contract had been for the delivery of specific articles on *demand;* for then a demand, and refusal or failure, should be specially averred. But in cases where the contract specifies the *sum* to be discharged by the delivery of specific articles, or of a particular description of currency, and the time of payment, the place of delivery or payment either results from the nature of the contract itself, or is to be fixed by the creditor upon application of the debtor, before the time of delivery. In such cases it has been held that it is the duty of the payor to apply to the payee before the day of payment arrives, to ascertain where he will receive the articles specified; and it is the privilege of the latter to fix the place of delivery, provided it be a reasonable one, which the debtor will be bound to observe; or failing so to do, he will lose the benefit of discharging his contract *specifically,* and must be held to pay it in money. Bixley v. Whitney, 5 Greenl., 192. In cases, then, where the place of payment is fixed by the contract, or results from the nature of such contract, and in cases where the first step is to be taken by the debtor to ascertain the *place,* it is unnecessary for the plaintiff in describing his cause of action in his petition to allege anything concerning the place of payment, or his readiness there to receive the specific articles; and it will be sufficient if the petition set forth nonpayment generally. If the defendant relies on *specific* payment in his defense, he must set it forth with all the necessary incidents in his answer.

The plea is very defective. If the defendant intended to allege that on the day the note became due he tendered to the plaintiff the amount due in money, that is to say, gold and silver coin, he should have alleged his present readiness to pay in the same medium; otherwise the plea would be no defense. This he has not done, for upon a fair construction of this portion of the answer, the defendant alleges a tender in one description of currency, and his present readiness to pay in another, viz., bank notes of the Bank of Mississippi; and it does not appear by averment or otherwise that these "bank notes" are the currency referred to in the note. But in the absence of any statement of facts (and the transcript contains none in this case) it would be presumed, if the answer presented distinct and legitimate issues of fact, that these issues were properly tried in the court below, and determined in a manner compatible with its judgment.

In addition to the foregoing matters, the defendant has endeavored to establish an equitable defense, which he insists should preclude the plaintiff's recovery. This portion of the answer alleges that the note

---

[2] Nature, validity, obligation, construction and interpretation of contracts are determined by the lex loci contractus, unless a different place is fixed by the parties for performance. Hill v. McDermott, Dal., 419; Tinnen v. Mathews, Dal., 491; Huff v. Folger, Dal., 530; Gautier v. Franklin, 1 T., 732; Hays v. Cage, 2 T., 301; Snoddy v. Cage, 5 T., 106; Andrews v. Hoxie, 5 T., 171, 189; Campbell v. Wilson, 6 T., 379, 390; Raymond v. Holmes, 11 T., 54; Hall v. Harris, 11 T., 300, 305; McLeod v. Board, 30 T., 238; Cantu v. Bennett, 39 T., 303; Weider v. Maddox, 66 T., 372; Life Ass'n v. Harris, 94 T., 25; Apollos v. Staniforth, 3 T. C. A., 502; Merrielles v. State Bank, 5 T. C. A., 483; Tilliard v. Hall, 11 T. C. A., 381; M. K. & T. Ry. v. Thompson, 11 T.

sued on, together with several others, was given in purchase of two town lots in the town of Hernando, on the 11th of November, 1839, to one John L. Brown; that said Brown had purchased not only *these,* but *other* lots in said town, of the plaintiff and one Samuel McCorkle, and had received their bond to make a title when *all* the lots so purchased should be paid for; that the said McCorkle has informed him that the title to *his two lots* will not be made until Brown shall pay for *all* the lots he purchased; that Brown fraudulently concealed from the respondent the situation of the title to the lots purchased of plaintiff and McCorkle as aforesaid, and did not disclose the incumbrances affecting them; that consequently the respondent purchased in ignorance of these circumstances, and that he believes and charges that the said Brown is insolvent; that said Brown transferred the note sued on to the plaintiff; that it is the joint property of plaintiff and McCorkle who received it, knowing the circumstances under which it was given; also that he, the respondent, *took possession* of the *two* lots for which the note was given, believing that Brown would make him a good title, etc.

We do not deem it necessary to allude to the incumbrances complained of by Hardin. The latter part of his answer renders it entirely unnecessary to do so. To avail himself of the relief which he sought from the equitable power of this court, he should have shown that he had been evicted from those two lots, of which he took possession at the time of the purchase. 8 N. S., 330; 2 N. S., 619; 3 N. S., 611; 4 Mart., 23.

The defendant can not be permitted to withhold the price, unless he be evicted by one having paramount title. It would be alike unjust and contrary to the authorities cited to permit him to retain the property in possession without any actual or probable danger of being disseised or disturbed in the enjoyment of it, and at the same time refuse to pay the price. The judgment of the court below must be affirmed.

*Affirmed.*

## No. XXXII.

### JESSE CARR, BY DAVID A. MONAGHAN, GUARDIAN, v WILLIAM WELLBORN.

#### (See Note 79.)

*Appeal from Red River County.*

MORRIS, JUSTICE.—The plaintiff Monaghan, guardian of Carr, filed his bill in the district court on the 17th of February, 1843, and alleges the pendency of a suit in the chancery court for the sixth district of the

C. A., 658; M. P. Ry. v. Harris, 1 App. C., sec. 1265. By place of performance. Ryan v. M. K. & T. Ry., 65 T., 13; Seiders v. Life Ass'n., 93 T., 194; Life Ass'n. v. Harris, 94 T., 25; Good v. Caldwell, 11 T. C. A., 515; Applebaum v. Bates, 3 App. C., sec. 167. If to be partly performed in different States, intention of parties governs. Ryan v. M. K. & T. Ry., 65 T., 13. Seems that marriage contracts are an exception to general rule of lex loci contractus. Shreck v. Shreck, 32 T., 578. If subject of contract is land, the lex loci rei sitas governs. A mortgage executed without the State, contrary to its laws or public

northern chancery division of the State of Alabama, held in Huntsville on the third Monday after the fourth Monday in November, 1840, commenced by original bill some time in the year 1837, wherein the same parties as are now in this court were plaintiff and defendant. In which said bill it is substantially averred that Jesse Carr is and always has been a man of extremely weak and unsound mind, so as to be and always to have been incapable of managing his own affairs and especially incapable of making valid contracts. The bill sets forth the inquisition of lunacy taken before the proper tribunal in the State of Alabama and the action of that court adjudging said Carr to be non compos, or an idiot; the appointment of said Monaghan as the guardian both of his person and property; also, that about ten years before filing of said bill, Carr was possessed in his own right of certain negro slaves (naming them); that the said Wellborn, operating on the feeble mind of Carr, taking advantage of his extreme mental imbecility, by fraudulent means and contrivances induced him to convey the said slaves to said Wellborn under a fraudulent sale; that the said Wellborn has remained ever since in possession of said slaves, whose number has increased by births from the females. The petition prays that the sale be set aside as null and void and the negroes in controversy be decreed to Monaghan, as guardian of Carr. Upon this petition, after full answer by defendant and a tedious litigation of two years, a decree was rendered by the chancellor of said court in the State of Alabama, in November, 1840; wherein "it was ordered and adjudged that Jesse Carr recover of said Wellborn the sum of $967.90, with the slaves mentioned in his bill; and that all title of and to said slaves be divested out of Wellborn and vested in complainant Carr; the said slaves to be delivered to and held by his guardian, the said David A. Monaghan, for the use and benefit of said Carr." The whole record in this case is made a part of the plaintiff's petition in the court below; which goes on and alleges, that soon after the determination of said cause, or during its pendency, the defendant, Wellborn, secretly and fraudulently conveyed away the said slaves from the State of Alabama to the county of Red River, in this Republic, where he resides; and continues to hold them and their increase without title and in bad faith, and refuses to deliver them to the plaintiff in this action. To this petition the defendant filed a demurrer and also, under the rule of court, an answer to the merits. The demurrer was sustained by the court below and the plaintiff's bill dismissed with costs; from which judgment an appeal has been taken to this court.

---

policy, is void. Cantu v. Bennett, 39 T., 303; Fowler v. Bell, 90 T., 150. Contract valid under lex loci contractus is valid everywhere, unless in contravention of lex fori. If void under lex loci contractus, void everywhere. Andrews v. Hoxie, 5 T., 171, 189; Shelton v. Marshall, 16 T., 344; Ryan v. M. K. & T. Ry., 65 T., 13; Weider v. Maddox, 66 T., 372; Fowler v. Bell, 90 T., 150; Tuckett v. Herdic, 5 T. C. A., 690; T. & P. Ry. v. Davis, 2 App. C., sec. 191. If lex loci contractus is not alleged and proved, lex fori will be applied. Hill v. McDermott, Dal., 419; M. K. & T. Ry. v. Cocreham, 10 T. C. A., 166. Whether a writ is wrongfully sued out, is determined by the laws of the State where it was obtained. Wiley v. Traiwick, 14 T., 662.

Dallam—40. (625)

The points raised by the demurrer are:

1. That a guardian, appointed in a foreign country, can not maintain a suit for his ward in our tribunals.

2. That by our laws, no suit founded on a judgment or decree of a foreign tribunal can be maintained in our courts, with certain exceptions; and that the judgment or decree which is the foundation of the plaintiff's action does not fall within those exceptions.

Upon the first point we must confess that much difficulty and embarrassment, under the peculiar circumstances of this case, have arisen in our minds. In examining the opinions of jurists on this subject, we find names eminent in the science of the law enrolled on opposite sides, and in support of their respective opinions, arguments so plausible in themselves and so well based on the foundations of reason and law and logic, that the mind rests suspended in doubt as to a correct conclusion. The civilians almost without exception agree in the conclusion that the authority of the guardian over the person and personal, or movable property of his ward extends to foreign countries, and that he is entitled to assert his claims over the movable property of the ward and sue for his debts in a foreign country, without having any confirmation of his guardianship by the local authorities; whilst some have gone to the extent of permitting and recognizing the same right over the immovable property. In the English courts, at least one case can be found where the first proposition has been sustained; although the current of modern cases in their courts seems to have fallen into what now is the fixed channel of the large mass of American decisions, "that the rights and powers of guardians are strictly local, and not entitling them to exercise any authority over the person 'or personal property of their wards in other States, upon the same reason and policy that has circumscribed the rights and authorities of foreign executors and administrators, who are not permitted to sue or be sued in their official capacity in any country, foreign to that from whence they derive authority; but to maintain any suit, new letters of administration must be obtained in accordance with the laws of that country in whose tribunals they may wish to institute an action." The authorities on this subject are now so numerous that they scarcely need a reference to them; although upon examination it will be found that the general rule has had its exceptions and distinctions which have been supported by reasons the most cogent and forcible. In 8 Louisiana, in the case of Chiapella v. Comprey et al., it has been decided, "that a tutor, or guardian regularly appointed in another State, or foreign county, has authority to sue for,

---

**Note 61.**—Simms v. Price, p. 554.

Purpose of charge is to give jury the means of applying the law to the facts. Reynolds v. Williams, 1 T., 311; Henry v. Sansom, 2 T. C. A., 150. Charge should state matters of law, not questions of fact. Reynolds v. Williams, 1 T., 311; Gay v. McGuffin, 9 T., 501; Jones v. State, 13 T., 168; Insurance Co. v. Brown, 82 T., 631; Searcy v. State, 1 T. App., 440; Rice v. State, 3 T. App., 451. Should distinctly separate questions of law from questions of fact. Rogers v. Broadnax, 24 T., 538; Brucham v. Gann, 1 U. C., 345; Hammond v. Coursey, 2 U. C., 29. Questions of fact only should be submitted

recover, receive or take possession of property situated in that State, belonging to the inheritance of his ward, without confirmation by any of the tribunals of that State." The court in that instance say, "that though their decisions, with regard to foreign testamentary executors having no right to sue except after confirmation by their courts, might well be questioned, still, being settled by previous adjudication, they will not now inquire into it." And in conclusion the reason is given in general terms, "as arising from the distinction between the rights and duties of tutors and guardians and executors. The office of the latter is of short duration and confined solely to the property of the estate; whilst the former have the guardianship and protection of minors committed to their charge, and are bound to provide for their maintenance for a length of time. They would be unable to perform their duties if the possession of the estate which they have a right to administer be withheld from them."

In the case of Holmes et al. v. Rensen et al., Executors of Clason, cited in 4 Johns. Chan. Rep., 460, it was held, "that the assignees of a foreign bankrupt might sue in that State (New York) for debts due to the bankrupt's estate, either as such assignees or in the name of the bankrupt." Although this case may not be precisely in point, still in many of its bearings and much of the reasoning of the learned judge it will be found parallel in principle with the case at bar. The general grounds of international law, public polity, and general comity between nations, which form the basis of the conclusions at which he arrives, are alike applicable to this case, and prove at least that the broad rule laid down with regard to persons deriving their authority by local law being confined strictly within the limits of the jurisdiction from whence they derive their authority, not only admits of exception, but also of extension, when reason and justice require it. Organized as our system is on the principles of the common law, both reason and prudence should lead to adopt decisions of courts whose system is the same; especially when supported by the authority of reason and the dignity of names, eminent for their proficiency in science and wisdom and their elucidation of the principles of the common law. Much less would we attempt, in the infancy of our jurisprudence, to decide between the conflicting opinions of civil and common law jurists on so difficult a question. "Non nostrum tantas componere lites." Enough that we should follow in the beaten track, guided by the lights which they have shed, to conclusions correct in principle, guarded by precedent, and just in their effects. Admitting, then, that the decision of judges of the common law courts on this subject be correct, and that we adopt them as our

---

to jury. Railway v. Murphy, 46 T., 356. Jury must look alone to charge of court for the law, and to evidence for facts. Green v. Hill, 4 T., 465; Railroad v. Nixon, 52 T., 19; Goode v. State, 16 T. App., 411. If jury finds contrary to instructions, verdict should be set aside. Reynolds v. Williams, 1 T., 311; Railway v. Mackney, 83 T., 410; Marsalis v. Patton, 83 T., 521; Goggan v. Evans, 12 T. C. A., 253; Wilkinson v. Wallis, 1 App. C., sec. 688. Error for court to direct jury for which party to find. Reynolds v. Williams, 1 T., 311; San Antonio v. Lane, 32 T., 405; Williams v. Davidson, 43 T., 1.

own, we have seen that even with them there are exceptions and distinctions, by *implication*. Are there none in express terms?

In section 516, page 432, Story's Conflict of Laws, we are called on to note a distinction which is rather in the nature of an exception to the general rule which has been before stated. He says: "If a foreign administrator has in virtue of his administration reduced the personal property of the deceased there situated into possession, so that he has acquired the legal title thereto according to the laws of that country, if that property should be afterwards found in another country or be carried away and converted there against his will, he may maintain a suit there, *in his own name and right,* personally, without taking out new letters of administration; for he is to all intents and purposes the legal owner thereof, although he is so in the character of trustee for other persons; and so with regard to specific legacies," etc. I might stop at this point, as being conclusive on the question before us for consideration, but for the fact that the words of the learned author might lead to the conclusion that a reduction of the property into "absolute and positive possession" was necessary before the right of the administrator would be recognized. Let us see if such be his meaning, or such the conclusion to which *reason and law* should lead us!

The judgment or decree on which the present action is founded wa', in the alternative, for the specific property claimed in the bill; or, if that could not be reached, for its *value*. It was in its terms and from its very nature a judgment in rem; and such judgments upon principles of comity, international law, and reason are final and conclusive everywhere. Story's Con. of Laws, p. 495, secs. 591, 592. Even were this a judgment in personam, which has been held in some courts both of the United States and England to be only prima facie evidence of that which it purports to adjudge or decide, still, under the form and in the manner in which this case is presented to our consideration, it could not be attacked. The extreme limit to which any of the courts above mentioned have gone in examining the judgments of foreign tribunals in *fact,* although from the general expressions used in their decisions *an implication to a greater extent could be drawn,* is, "that it must be shown that such foreign tribunal has jurisdiction over the subject matter and the person; that due notice had been given to the parties; or that it was procured by fraud, founded in mistake, or irregular and bad by the local law, rei judicatae." Story's Con. of Laws, p. 507.

The judgment or decree which is the basis of this action, together

---

**Note 62.**—Darly v. Chevalier, p. 555.

[1] Errors not objected to in trial court can not be raised on appeal. Edwards v. Peoples, Dal., 359; Mann v. Thruston, Dal., 370; Bailey v. Hardy, Dal., 376; Wescott v. Menard, Dal., 503; Hansborough v. Towns, 1 T., 58; Crosby v. Houston, 1 T., 203; Burton v. Anderson, 1 T., 93; O'Conner v. Towns, 1 T., 107; Jones v. Black, 1 T., 527; Cloud v. Smith, 1 T., 611; Swenson v. Walker, 3 T., 93, 110; Hopkins v. Donaho, 4 T., 336; Coles v. Perry, 7 T., 109; Davenport v. Lackie, 8 T., 351; Pierson v. Burney, 15 T., 272; Shelby v. Burtis, 18 T., 644; Bullock v. Hayter, 24 T., 9; Robinson v. Mattison, 25 T. Supp., 451; Elliot v. Mitchell, 28 T., 105; Allen v. Traylor, 31 T., 124; An-

with the record of the cause in the court wherein it was decided, having been made a part of the petition, the demurrer of the defendant, by admitting its correctness, would prevent the possibility of those questions arising now; and so far as the present position of the case is concerned, the judgment would be and is deemed conclusive as to the rights of the parties, whether it be in rem or in personam, unless some of the causes above enumerated were shown to exist upon the face of the decree, which has not been attempted to be done. That judgment divests the property in the negroes out of Wellborn and vests it in Carr (the idiot), and vests likewise the legal title and possession in Monaghan, as trustee for Carr. Monaghan had before that time, by his appointment from the proper court as guardian for Carr, been clothed with all the rights of his ward, in possession or in action. This was a right in "action," which when established in a competent tribunal, became merged in the judgment and vested as an absolute right in him personally.

Thus when a judgment is obtained by an administrator against a debtor, in the court to whose jurisdiction he is accredited, it will give the right to such administrator to maintain a personal suit against the debtor in any other State; because the judgment would *as to him* merge the original debt and make *it personally due to him, in his own right;* he being responsible therefor to the estate. Story's Con. of Laws, 522, p. 437. If this be correct law as to debts, it is equally applicable to "specific recovery of specific property;" and the right of an administrator to such recovery, when established by a competent tribunal, would merge the former inchoate right and give it personally to *him;* in which event he might maintain a suit in his own name in a foreign tribunal. With the strict rules, as applicable to *administrators,* we find that the *right would exist;* a fortiori then should it more readily be extended to guardians, whose rights and privileges, as well as those of their wards, are the special objects of the care and protection of the courts of all countries. The guardian in the case before us has prosecuted his inchoate right in a competent tribunal, having jurisdiction over the person and subject matter in controversy; he has obtained his decree, which merges the former right and vests it *personally in him;* and he therefore falls clearly within the distinction and is entitled to maintain his action.

The second ground of demurrer is urged under the second section of an act of our Congress, entitled "An act creating a system of bankruptcy and regulating the collection of foreign debts." Texas Laws, vol 5, p. 44. The section reads in the following words:

"That no suit, proceeding, judgment or decree shall be brought, pros-

drews v. Jones, 36 T., 149; Hughes v. Roper, 42 T., 116; Carter v. Eames, 44 T., 544; Johnson v. Blunt, 48 T., 38; Ragsdale v. Robinson, 48 T., 379; Life Ins. Co. v. Ray, 50 T., 511; Urquhart v. Womack, 53 T., 616; Brooke v. Clark, 57 T., 105; Caruth v. Grigsby, 57 T., 259; Farley v. Deslonde, 58 T., 588; Long v. Garnett, 59 T., 229; Langton v. Marshall, 59 T., 269; Flanagan v. Pearson, 61 T., 302; Gaines v. Nat. Exchange Bank, 64 T., 18; Ford v. Cowen, 64 T., 129; Blum v. Golden, 66 T., 621; Cannon v. Cannon, 66 T., 682; Tevis v. French, 71 T., 59; Ellis v. Garvey, 76 T., 371; Shornick v. Bennett, 77 T., 244;

ecuted or sustained in any court or judicial magistracy of this Republic, on any judgment or decree of any court or tribunal of any foreign nation, State or territory; this Republic not being bound by any international law or comity to give credence or validity to the adjudication of foreign tribunals whose measures of justice and rules of decision are variant and unknown here; but this provision is *in 'no degree'* to affect the validity or obligation of contracts, engagements or pecuniary liabilities originating abroad, or the original evidence, testimony or proof to establish the same; neither shall this provision extend to, or embrace any foreign judgment or decree, for specific property or *recovery,* introduced as the basis of a public sale for the transmission of title, or the record or memorial of any *link* or *muniment* of title to specific estate, all of which shall depend upon the present law and usages of the Republic; and this provision shall not in any manner relate to or affect the determination of courts of admiralty and maritime jurisdiction abroad, proceeding in rem and according to the laws of nations."

The judgment or decree on which this action is founded is, under the demurrer, to be deemed conclusive between the parties, as we have before stated. That judgment divests the property out of appellee in this court, who was the defendant below, and vests it in the appellant. It is for "specific estate" and forms of itself the *muniment* of the appellant's title, coming, both in terms and spirit, within the letter and intent of the statute. It is the "record or memorial of a muniment of title" of the same nature but higher dignity than a *deed.* That portion of the judgment which relates to moneyed transactions between the parties and decrees a recovery to the plaintiff of a certain amount of money, must fail under the statute; but as to the *specific estate and recovery,* it is well brought and must be sustained.

Both grounds of demurrer, then, being untenable, we think that the court below erred in sustaining it. It is therefore ordered and adjudged that the judgment of the court below be reversed, the demurrer overruled, and the cause remanded to proceed upon the bill and answer.

*Reversed and remanded.*

Brown v. Perez, 79 T., 157; Cason v. Conner, 83 T., 26; Hanrick v. Curley, 93 T., 458; Lytle v. Custead, 4 T. C. A., 490; Baker v. Collins, 4 T. C. A., 520; Spencer v. James, 10 T. C. A., 327; Eastham v. Sims, 11 T. C. A., 133; Prestage v. Loving, 1 App. C., sec. 707; Adams v. Duggan, 1 App. C., sec. 1268; Sears v. Green, 1 U. C., 734.

    [2] In order to maintain action against executor or administrator, claim must be duly authenticated, presented and rejected. Graham v. Vining, 1 T., 639; Tompkins v. Bennett, 3 T., 36, 49; Harrison v. Knight, 7 T., 47; Hall v. McCormick, 7 T., 269; Millican v. Millican, 15 T., 460; Thompson v. Branch, 35 T., 21; Bank v. Higgins, 72 T., 66; Jenkins v. Cain, 72 T., 88; Kiolbassa v. Raley, 1 T. C. A., 165; Perkins v. Traynham, 3 App. C., sec. 78; Ballard v. Murphy, 4 App. C., sec. 171; Lainer v. Taylor (T. C. A.), U. R. C., 1897. Presentation and rejection after suit is filed, is not sufficient. Thompson v. Branch, 35 T., 21. And authentication, presentation, rejection and date of same should be specifically alleged and proved. Cummings v. Jones, Dal., 531; Graham v. Vining, 1 T., 639; Graham v. Vining, 1 T., 669; Hall v. McCormick, 7 T., 269, 278; Deen v. Duffield, 8 T., 235; Fulton v. Black, 21 T., 424; Wiley v. Pinson, 23 T., 486; Walters v. Prestidge, 30 T., 65; Swift v. Trotti, 52 T., 498; Tolbert v. McBride, 75 T., 95; Rogers v. Harrison, 1 App. C., sec. 495. Indorsement on claim rejecting it, is prima facie proof of rejection, in

## No. XXXIII.

### NASH AND MABBIT V. THE REPUBLIC.

#### (See Note 80.)

*Appeal from San Augustine County.*

HEMPHILL, CHIEF JUSTICE.—In this case the defendants, being guilty of an affray, were ordered by the court to pay fines respectively and to remain in custody until payment was made. After the entry of the judgment, motions were made by the defendants separately for the arrest thereof; and on considerations of the motions, judgment against Nash was arrested; but the court, regarding the grounds set forth in the motion made by the defendant Mabbit as novel and difficult, made no decision thereon, but reserved them for the discretion and consideration of the Supreme Court. Were it competent for this tribunal to entertain jurisdiction of the points of law involved in this case, we might discuss the propriety or legality of entertaining a motion in arrest of judgment after it has once been rendered by the court; but the questions reserved for our deliberation not having been decided below, we are without jurisdiction and can not properly consider any of the matters embraced in the record.

The Constitution having declared that the jurisdiction of the Supreme Court shall be appellate only, we are limited to the review of the adjudications of inferior courts; and until their decisions are made, no subject matter arises on which the revisory power of this court can be exerted. See the case of McLaughlin v. The Republic, 1841. It is therefore ordered that the case be dismissed for want of jurisdiction.

*Dismissed.*

## No. XXXIV.

### JAMES L. SMITH V. WILLIAM JAMISON.

*Appeal from Harrison County.*

JACK, JUSTICE.—Jamison sued Smith in the district court upon five several notes and obtained judgment. Smith appealed. One of the notes was made payable, "to Sewell and Long, or bearer." The petition contains an averment that this note, "for a valuable consideration, was transferred by delivery" to the plaintiff below.

The statement of facts sets out: "That one of the notes sued on was made payable to Sewell and Long, or bearer,—a firm in the town of

---

absence of plea of non est factum. Tolbert v. McBride, 75 T., 95. These rules are as applicable to claims secured by liens as to unsecured claims. Graham v. Vining, 1 T., 639; Graham v. Vining, 2 T., 433; Danzey v. Swinney, 7 T., 617; Conkrite v. Hart, 10 T., 140, 141; Crosby v. McWillie, 11 T., 94; Duty v. Graham, 12 T., 427, 437; Robertson v. Paul, 16 T., 472, 475; Cunningham v. Taylor, 20 T., 126; Converse v. Sorley, 39 T., 515; Buchanan v. Wagnon, 62

Shreveport, Louisiana,—as attorneys at law, and judgment was rendered for plaintiff, without proving the existence of the partnership."

Upon this statement of facts the case is submitted in this court without argument.

We know of no rule of evidence which requires the proof to be made, by the holder of a note indorsed or transferred to him, of the partnership of the original payees of such note. And even if such were the law, the defendant in this case below in one of his answers has expressly admitted the fact, by averring that the note was "made payable to James B. Long and William Sewell, partners."

We are of the opinion that the appeal was for delay, and that the judgment of the district court should be affirmed with 10 per cent damages.

*Affirmed.*

## No. XXXV.

### MITCHELL v. BARTON.

OCHILTREE, JUSTICE.—This case has been brought here by the appellee, who demands an affirmance of the judgment of the court below. The tenth rule for the government of the Supreme Court prescribes the manner in which transcripts shall be prepared for the inspection of this court.

The transcript in this case is so entirely slovenly, so wanting in every essential requisite under the rule to which we have referred, that we decline taking any further action thereon.

---

T., 375; Wilson v. Harris, 91 T., 427. It is not necessary to verify and present claim to independent executor before bringing suit. Pleasants v. Davidson, 34 T., 459; Black v. Rockmore, 50 T., 88, 99; Smyth v. Caswell, 65 T., 379; Ellis v. Mabry, 25 T. C. A., 164. If executor allows claim and rejects lien, suit can not be maintained to foreclose lien. Mortgage Co. v. Jackman, 77 T., 622; George v. Ryon, 94 T., 317; Moore v. Glass, 6 T. C. A., 368. In such cases the lien must be enforced through probate court and not by an independent action in another court, except where claimant has some legal or equitable right connected with claim, which can not be adjudicated in probate court. Cunningham v. Taylor, 20 T., 126; Cannon v. McDaniel, 46 T., 303; George v. Ryon, 94 T., 317; Moore v. Glass, 6 T. C. A., 368; Perkins v. Traynham, 3 App. C., sec. 78. When both claim and lien on land are rejected, only remedy is in district court. Leslie v. Elliott, 26 T. C. A., 578. Presentation to and rejection by one of several executors is sufficient to authorize suit. Deen v. Duffield, 8 T., 235. Failure to present claim within one year from appointment of administrator does not defeat action to foreclose lien. Phillips v. Mortgage Co., 90 T., 195. When a lien claim is rejected, claimant may have judgment in district court for establishment of lien as well as debt. Cunningham v. Taylor, 20 T., 126; Perkins v. Sterne, 23 T., 561; George v. Ryon, 94 T., 317 (reversing George v. Ryon, T. C. A., U. R. C., 1900); Jenkins v. Cain (T. Sup.), U. R. C., 1889. Presenting claim without presenting lien is sufficient presentation, though the better practice is to present both. Danzey v. Swinney, 7 T., 617; Cundiff v. Simpson, 32 T., 144; Cannon v. McDaniel, 46 T., 303; Mortgage Co. v. Jackman, 77 T., 622. Presenting claim alone is not waiver of lien. Ball v. Hill, 48 T., 634; Kempner v. Comer, 73 T., 196; Sutherland v. Elmendorf, 24 T. C. A., 137. In a contest between lien creditors, appellant can not on appeal object for first time that appellee's claim was not duly authenticated and presented, where administrator is not party to ap-

peal. Watt v. White, 46 T., 338. Holder of vendor's lien note is not required to present claim to administrator of deceased indorser before bringing suit against maker to foreclose lien. Watt v. White, 46 T., 338.

**Note 63.**—Ward v. Boon, p. 561.

Action of court in granting or refusing continuances will not be revised unless it is plain that injustice has been done. Hart v. King, Dal., 456; Hipp v. Bissell, 3 T., 18; Hipp v. Huchett, 4 T., 20; Ayers v. Duprey, 27 T., 593; Peck v. Moody, 33 T., 84; Addington v. Bryson, 1 App. C., sec. 1292; Texas Express Co. v. Scott, 2 App. C., sec. 72. Where the allowance or refusal of the continuance is within the discretion of the court a very clear case of abuse of discretion must be shown to authorize a reversal. Lewis v. Williams, 15 T., 47; Byne v. Jackson, 25 T., 95; Baldessore v. Stephanes, 27 T., 455; McMahan v. Busby, 29 T., 191; Wiggins v. Fleishel, 50 T., 57; Allyn v. Willis, 65 T., 65; M. P. Ry. Co. v. Christman, 65 T., 369; Guy v. Metcalf, 83 T., 37; T. & P. Ry. Co. v. Hall, 83 T., 675; Hannah v. Chadwick, 2 App. C., sec. 513.

**Note 64.**—Robertson v. McMillan, p. 564.

A verdict is sufficiently certain which can be rendered certain by reference to the record. Burton v. Anderson, 1 T., 93; Burton v. Bondies, 2 T., 203; James v. Wilson, 7 T., 230; Wells v. Barnett, 7 T., 584; Norton v. Reynolds, 8 T., 284; Smith v. Johnson, 8 T., 418; Parker v. Leman, 10 T., 116; Avery v. Avery, 12 T., 54; Moke v. Fellman, 17 T., 367; Kolb v. Bankhead, 18 T., 220; Pearce v. Bell, 21 T., 688; Loggins v. Buck, 33 T., 113; Newcomb v. Walton, 41 T., 318; Griffin v. Chadwick, 44 T., 406; Irvin v. Garner, 50 T., 48; G. C. & S. F. Ry. Co. v. James, 73 T., 12; M. P. Ry. Co. v. White, 76 T., 102; Martin-Brown Co. v. Perrill, 77 T., 199; Buchanan v. Townsend, 80 T., 534; Dodd v. Gaines, 82 T., 429; Kinkler v. Junica, 84 T., 116; G. C. & S. F. Ry. Co. v. Fink, 4 T. C. A., 269; Merrielles v. Bank, 5 T. C. A., 483; Evans Co. v. Reeves, 6 T. C. A., 254; Alamo Fire Ins. Co. v. Lancaster, 7 T. C. A., 677; Holden v. Meyer, 1 App. C., sec. 832; Munn v. Martin, 4 App. C., sec. 61.

**Note 65.**—Holdeman v. Knight, p. 566.

The rule against multiplicity of suits has special favor in our system of procedure, and a party who can enforce his right in one suit, will not be permitted to resort to many. Chevalier v. Rusk, Dal., 611; Binge v. Smith, Dal., 616; Pitts v. Ennis, 1 T., 604; Smith v. Power, 2 T., 57; Francis v. Northcote, 6 T., 185, 188; Moore v. Minerva, 17 T., 20, 23; Clegg v. Varnell, 18 T., 294; Blair v. Gay, 33 T., 157; Lyles v. Murphy, 38 T., 75; Bond v. Dillard, 50 T., 302; Goldman v. Blum, 58 T., 630; Rush v. Bishop, 60 T., 177; G. H. & S. A. Ry. Co. v. Dowe, 70 T., 5; Moody v. Smoot, 78 T., 119; Middlebrook v. Bradley, 86 T., 706; Mathonican v. Scott, 87 T., 396; Mathis v. Pridham, 1 T. C. A., 58; St. L. S. W. Ry. v. Moss, 9 T. C. A., 6; Mateer v. Cockrill, 18 T. C. A., 391; S. A. & A. P. Ry. v. Griffin, 20 T. C. A., 91; Wilson v. P. & N. Ry., 23 T. C. A., 706; Cox v. Lloyd, 1 App. C., sec. 123; Vogelsang v. Mensing, 1 App. C., sec. 1165; H. & T. C. Ry. v. Stewart, 1 App. C., sec. 1246; I. & G. N. Ry. v. Donalson, 2 App. C., sec. 238. A second suit may be maintained upon a judgment when a second judgment will be more advantageous than the first  Stephens v. Stone, 94 T., 415.

**Note 66.**—Smith v. Townsend, p. 569.

As a general rule copies of notarial acts are admissible in evidence. Houston v. Perry, 5 T., 462; Herndon v. Casiano, 7 T., 322; Titus v. Kimbro, 8 T., 210; Hubert v. Bartlett, 9 T., 97; Beaty v. Whitaker, 23 T., 526; Andrews v. Marshall, 26 T., 212; Hooper v. Hall, 35 T., 82; Storey v. Flanagan, 57 T., 649; Smith v. Gillum, 80 T., 120; Frost v. Wolf, 77 T., 455; Trinity County Lumber Co. v. Pinckard, 4 T. C. A., 671. Is not admissible without proof of due execution by notary. McCarty v. Johnson, 20 T. C. A., 184.

**Note 67.**—Harlan v. Baker, p. 578.

If instructions given by the court are defective in omission special charges should be requested. Converse v. McKee, 14 T., 20; Robinson v. Varnell, 16 T., 382; Cole v. Cole, 17 T., 4; Linn v. Wright, 18 T., 317; Bast v. Alford, 20 T., 226; Fowler v. Waller, 25 T., 695; Powell v. Haley, 28 T., 56; Simonton v. Forrester, 35 T., 584; Robinson v. Davenport, 40 T., 333; Johnson v. Granger, 51 T., 42; Hawkins v. Cramer, 63 T., 99; Hays v. Hays, 66 T., 606; T. & N. O. Ry. v. Crowder, 70 T., 222; Currie v. Gunter, 77 T., 490; Mayer v. Walker, 82 T., 222.

**Note 68.**—Republic v. Skidmore, p. 581.

Under Act of December 14, 1837 (Gammel's Laws of Texas, vol. 1, p. 1404), it was necessary to prove in court the same facts which the statute

required for the satisfaction of the Board of Land Commissioners. Land Commissioners v. Reily, Dal., 381; Johns v. Republic, Dal., 621; Land Commissioners v. Raguet, 2 T., 98. Claimants were required, prior to Act of February 2, 1848 (Gammel's Laws of Texas, vol. 3, p. 18), to prove same facts under section 11 of Act of February 4, 1841 (Gammel's Laws of Texas, vol. 2, p. 635). Tichner v. State, 2 T., 269; State v. Mason, 2 T., 315; Linn v. State, 2 T., 317. Acts of December 14, 1837, and February 4, 1841, required applicant to prove that he did not refuse to participate in the war and that he did not assist the enemy; and if applicant's intention of remaining while in the Republic, and certainly of returning on departure, were equivocal, he was not entitled to establish claims for donations of land. State v. De Casinova, 1 T., 401; Thomerson v. State, 8 T., 172; Russell v. Randolph, 11 T., 460; Patton v. Evans, 15 T., 363. But temporary absence did not forfeit claim. Republic v. Young, Dal., 464. Applicant to establish headright claim under Acts of December 14, 1837, and February 4, 1841, was required to prove both actual residence at date of declaration of independence and continued residence to time of making application to establish claim. Land Commissioners v. Walling, Dal., 524; Jones v. Republic, Dal., 621; State v. De Casinova, 1 T., 401; Grooms v. State, 1 T., 568; Republic v. Skidmore, 2 T., 261; Tichner v. State, 2 T., 269; Land Commissioners v. Wiley, 3 T., 237; Paschal v. Perez, 7 T., 348; Jones v. Montes, 15 T., 351. Titles issued by alcaldes and commissioners after closing of Land Office by Act of Consultation on November 13, 1835 (Gammel's Laws of Texas, vol. 1, p. 541), which took effect immediately on adoption, are null and void. Donaldson v. Dodd, 12 T., 381; Spier v. Laman, 27 T., 205; Parker v. Baines, 59 T., 15. If the title was actually issued before November 13, 1835, making out and delivering the testimonio shortly afterwards did not invalidate the title. Houston v. Blythe, 60 T., 506. Holders of orders for surveys and headright certificates, issued prior to November 13, 1835, could only establish their claims in the mode prescribed by Act of December 14, 1837 (Gammel's Laws of Texas, vol. 1, p. 1404), upon proof of facts enumerated in section 12. Land Commissioners v. Reily, Dal., 381; Land Commissioners v. Walling, Dal., 524; Republic v. Inglish, Dal., 608; Johns v. Republic, Dal., 621; Jones v. Menard, 1 T., 771; Trimble v. Smithers, 1 T., 790; Land Commissioners v. Raguet, 2 T., 98; Land Commissioners v. Riley, 3 T., 237; Capp v. Terry, 75 T., 391. All certificates returned by commissioners as genuine, but not recommended on account of want of oath required by section 12 of Act of December 14, 1837, were validated and directed to be patented by Act of January 19, 1841 (Gammel's Laws of Texas, vol. 2, p. 528). Whitehead v. Foley, 28 T., 1; Spofford v. Bennett, 55 T., 293. Under Act of February 5, 1840 (Gammel's Laws of Texas, vol. 2, p. 335), patents could only issue on certificates of recommendation from Board of Land Commissioners and holders of unrecommended land certificates had no standing in court without it. Norton v. Land Commissioner, 2 T., 357; Bracken v. Wells, 3 T., 88, 90; Kemper v. Victoria, 3 T., 135; Miller v. Brownson, 50 T., 583. All surveys supported by recommended certificates valid; without them, invalid. Warren v. Shuman, 5 T., 441; Scott v. Mather, 14 T., 235; Whitehead v. Foley, 28 T., 268. Headright certificate is not color of title, unless recommended. Horton v. Crawford, 10 T., 382; Whitehead v. Foley, 28 T., 268. Prohibition in Act of February 5, 1840, against surveys on unrecommended certificates after May 1, 1840, did not legalize surveys made either prior or subsequently on unrecommended certificates. Warren v. Shuman, 5 T., 441. It seems that surveys on genuine headright certificates are valid, though not recommended by commissioners. Howard v. Perry, 7 T., 259; Hart v. Gibbons, 14 T., 213. But under Act of January 29, 1840 (Gammel's Laws of Texas, vol. 2, p. 313), authority to issue patents on first class headright certificates, was based on recommendation. Miller v. Brownson, 50 T., 583. Under extension of time allowed by Constitution of 1845, a survey made on an unrecommended certificate prior to January 1, 1844, suit to establish claim could be maintained in 1847. Lewis v. Mixon, 11 T., 564; Hart v. Gibbons, 14 T., 213; Scott v. Mather, 14 T., 235. Under Act of February 7, 1860 (Gammel's Laws of Texas, vol. 4, p. 1410), providing for re-examination of rejected warrants and certificates, a rejection made before limit of time fixed in section 11 is not void, the object of the statute being to give claimants ample time to prove their claims. Durrett v. Land Commissioner, 28 T., 687. Under Act of April 25, 1871 (Gammel's Laws of Texas, vol. 6, p. 962), holders of unlocated certificates were not required to locate them at any particular period between passage of law and January 1, 1875. Laws in force prior to Act of November 29, 1871 (Gammel's Laws of Texas, vol. 7, p. 47), did not require certificate and field notes to be returned within twelve months after survey. Snider v. I. & G. N. Ry., 52 T., 306; Snider v. Methvin, 60 T., 487. Under Rev. Stats., 1895, arts. 4138 and 4145, survey must be made within twelve months after entry, and field notes returned within twelve months after survey. Von Rosenberg v. Cuellar, 80 T., 249. A colonist was not en-

titled to a grant as head of a family, unless his family was resident in Texas.
Land Commissioners v. Bell, Dal., 366; Land Commissioners v. Reily, Dal.,
381; Land Commissioners v. Walling, Dal., 524; Langford v. Republic, Dal.,
588; Republic v. Inglish, Dal., 608; Johns v. Republic, Dal., 621; Grooms v.
State, 1 T., 568; Republic v. Skidmore, 2 T., 261; Tichnor v. State, 2 T., 269;
Lewis v. Ames, 44 T., 319, 345; Lott v. King, 79 T., 292; Hill v. Moore, 85 T.,
335; Byrn v. Kleas, 15 T. C. A., 205; Union Beef Co. v. Thurman, 70 Fed. Rep.,
965. An unmarried colonist, under twenty-one years of age, was not entitled
to a headright grant. Lockhart v. Republic, 2 T., 127. But it will be presumed
from the fact that a headright certificate was granted by the proper authority,
that the grantee was the head of a family, and evidence is not admissible in
a collateral proceeding to show that he was not married and that his family
was not in Texas. Johnston v. Smith, 21 T., 722; Bowmer v. Hicks, 22 T.,
155; Howard v. Colquhoun, 28 T., 134; Burkett v. Scarborough, 59 T., 495;
Capp v. Terry, 75 T., 391; Boone v. Hulsey, 71 T., 176; Hill v. Moore, 85 T.,
335; Byers v. Wallace, 87 T., 503. Grant is valid, if the grantee in good faith
intended to move his family to Texas. Republic v. Young, Dal., 464; State
v. Skidmore, 5 T., 469; Russell v. Randolph, 11 T., 460. Removal and inten-
tion to remain for an indefinite time changes domicile, though there may be
a floating intention to return at some future time. State v. De Casinova,
1 T., 401; State v. Skidmore, 5 T., 469.

**Note 69.**—Hamilton v. Black, p. 586.

A general demurrer admits all facts well plead to be true. Carr v. Well-
born, Dal., 624; Lambeth v. Turner, 1 T., 364; Zacharie v. Bryan, 2 T., 274;
Jouett v. Jouett, 3 T., 150; Catlin v. Glover, 4 T., 151; Chambers v. Miller,
9 T., 236; Earle v. Earle, 9 T., 630, 634; Holman v. Griswell, 13 T., 38; Roy v.
Bremond, 22 T., 626, 632; Williams v. Warnell, 28 T., 610; George v. Vaughan,
55 T., 129; Junction City School Incorporation v. Trustees, 61 T., 148, 152;
Lyle v. Harris, 1 App. C., sec. 71. It does not admit a conclusion of law
alleged by the pleader. Holman v. Criswell, 13 T., 38. Nor facts set up in
an amendment. Bryan v. Knight, 1 T., 180.